RUDE, RESPONDENT, *v.* MARSHALL, APPELLANT.

(No. 3,784.)

(Submitted June 8, 1917. Decided June 25, 1917.)

[166 Pac. 298.]

*Ejectment—Title by Prescription—Adverse Possession—Presumptions—Burden of Proof—Boundaries—Mistake—Effect.*

Ejectment—Title—Presumptions.
    1.  Plaintiff in an action in ejectment having shown legal title in himself, it will be presumed that defendant held possession of the disputed ground in subordination to such legal title.

    [For what property or invasion of possession ejectment is maintainable, see note in 116 Am. St. Rep. 568.]

Same—Adverse Possession—Burden of Proof.
    2.  The burden of proof was upon defendant to show, as he claimed, that his possession as well as that of his predecessor, covering in the aggregate a period of ten years immediately prior to the commencement of plaintiff's action in ejectment, was adverse.

Same—Title by Prescription—What Constitutes.
    3.  Adverse possession for a period of ten years immediately prior to the commencement of an action in ejectment confers title by prescription sufficient against all.

Same—Adverse Possession—How Intention may be Manifested.
    4.  The erection of a fence ten feet high inclosing ground of which the person erecting it was then in possession, *held* to have been a sufficient manifestation of his intention to claim and hold the land thus inclosed as his own, declarations or assertions by the occupant not being essential to constitute the possession adverse

Same—Adverse Possession—Boundary Lines—Mistake—Effect.
5. A mistaken belief on the part of all concerned in an action in ejectment as well as on that of their predecessors, that the line on which a fence had been erected was the true boundary line, whereas, according to plaintiff's claim, it encroached upon his property from 1.12 to 2 feet, could not, in the absence of an agreement or understanding between the adjoining owners with respect to the dividing line, destroy the claim of adverse possession; such a mistake not affecting the operation of the rule relating to the acquisition of title by prescription.

*Appeal from District Court, Silver Bow County; J. B. McClernan, Judge.*

ACTION by John Rude, administrator of the estate of Magna Rude, deceased, against J. W. Marshall. From a judgment for plaintiff and an order denying him a new trial, defendant appeals. Reversed and remanded.

*Mr. L. J. Hamilton,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Wm. F. Davis,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1897 Joseph Bohler was the owner of lot 1, block 10, of the Butte town site, forty-two feet wide east and west, and 100 feet north and south, and then sold the south half (42x50) to the Parrys, and at the same time erected a fence on or near the line dividing the two portions. By mesne conveyance M. T. Walsh obtained title to the north half about 1898, and in 1905 he sold and conveyed it to defendant, Marshall, who during the same year erected upon the property a substantial stone building, the south wall of which extended to the line of the Bohler fence. In 1909 Magna Rude succeeded to the interest of the Parrys in the south half, and in 1914 she commenced this action in ejectment, claiming that defendant's building encroaches upon her ground 1.12 feet at the west end of the building and two feet at the east end or Alaska Street front. By answer the de-

fendant denied all the material allegations of the complaint, and pleaded estoppel and title by adverse possession. Plaintiff prevailed in the court below, and defendant appealed.

Without stopping to consider the unsatisfactory evidence offered in support of plaintiff's claim, or the merits or demerits of defendant's contention that plaintiff is estopped to assert title to the ground in dispute, we confine ourselves to the defense of adverse possession, as it is determinative of the controversy.

There is not any conflict in the evidence. The question for determination is: What is the legal effect of the evidence produced by defendant in support of his claim to title by adverse possession? For sixteen years prior to the commencement of this action, defendant and his predecessor Walsh were in the quiet, undisputed, and uninterrupted possession of the ground north of the Bohler fence, including the north half of lot 1 and the ground brought into controversy by this action. Since 1905 defendant's possession has been characterized by every element which enters into the doctrine of prescription. However, in order to sustain this defense it is necessary for defendant to tack on his possession to that of his predecessor Walsh for at least a sufficient period to amount in the aggregate to ten years, the period of the statute of limitations. While it is beyond question that Walsh was in actual, exclusive, peaceable and uninterrupted possession from 1898 until he sold to Marshall, it is the contention of plaintiff that the evidence is insufficient to show that Walsh's possession was hostile. Plaintiff having shown that [1] she secured a deed to the south half of the lot which presumably conveyed the legal title to her, it will be presumed in the first instance that defendant held possession of the disputed strip in subordination to such legal title if, as we will assume, the fence actually encroaches upon the south half of the lot. (Sec. 6435, Rev. Codes; *Lamme* v. *Dodson,* 4 Mont. 560, 2 Pac. 298; *Peters* v. *Stephens,* 11 Mont. 115, 28 Am. St. Rep. 448, 27 Pac. 403.) The burden of proof was therefore upon the de-[2] fendant to show that his possession and the possession of his predecessor Walsh, covering in the aggregate a period of ten

years immediately prior to the commencement of this action, was adverse. (*Jennings* v. *Gorman,* 19 Mont. 545, 48 Pac. 1111.) If defendant proved such adverse possession for the [3] required period, then he showed a title absolute in himself to the disputed strip. Section 4571, Revised Codes, provides: "Occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar an action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all." (*State* v. *Auchard,* 22 Mont. 14, 55 Pac. 362; *Morrison* v. *Linn,* 50 Mont. 396, 147 Pac. 166.)

It is not made certain by this record just what purpose Bohler [4] had in erecting the fence in the first place, but from the fact that he built it at the time he sold the south half of lot 1 to the Parrys, it is fairly inferable that it was his purpose to mark the dividing line between the portion sold and the portion to the north retained by himself; but, however this may be, the character of the possession of the portion north of the fence after Walsh purchased is not left in doubt. In 1898, while the Parrys owned the south half of the lot and were in actual possession of whatever portion thereof lay south of the fence, and while Walsh owned the adjoining north half and was in possession of all of the lot north of the fence, he made known the fact that he was having some difficulty, and to avoid it he employed a contractor to repair and extend the Bohler fence. In company with the contractor, Walsh pointed out where the work was to be done, and under his direction the contractor built into and upon the old fence, making of it a substantial inclosure ten feet high. That this act was directed against the Parrys is certain. They were the adjoining owners in possession of and occupying the ground immediately south of the fence, and the only ones against whom it could have been aimed. But, furthermore, Mrs. Parry testified that she was present when the work was being done, and spoke to the contractor concerning it. "He couldn't have it too high, and I told him to put it higher." The fence was maintained in that condition until removed by Marshall to make way for his building.

But it is contended by plaintiff that the evidence does not disclose that Walsh ever told anyone that he claimed all the ground up to the fence, and therefore it is insufficient to show that his holding was adverse, and *Janke* v. *McMahon,* 21 Cal. App. 781, 133 Pac. 21, is cited as authority for this contention, and apparently supports it.   In the course of the opinion it is said: "The disputed strip was inclosed with and as a part of the lot belonging to McMahon, Sr., and the back porch of his house partially rested upon said strip, but there is no further basis for the claims of title.   There is no evidence that he ever declared that he owned the land, or that he intended to retain it as against the holder of the legal title."   If it was the intention to announce the doctrine that one who claims to hold adversely must make his intention manifest by word of mouth, proclaiming from the housetops his purpose, then we must respectfully decline to follow or approve a rule directly opposed to reason and the authorities generally.   It is an old adage, "Actions speak louder than words," and the truth of the maxim is nowhere made more apparent than in cases involving the claim of adverse possession of real property.

In *Lamme* v. *Dodson,* above, this court said: "The question of adverse possession is one of intention.   The intention must be discovered from all the circumstances of the case."   The rule, recognized practically everywhere, is aptly stated in 2 Corpus Juris, 128, as follows: "Declarations or assertions by the occupant are not essential to claim of title which may be made by acts alone quite as effectively as by declarations.   Customary acts of ownership and control of the land inconsistent with the title and possession of the true owner will suffice, and it has been said that this is the only proof of which a claim of title to a very large proportion of property is susceptible."   In 1 R. C. L., p. 704, the same principle is stated, though in somewhat different language, as follows: "If the character of the possession is such that a claim of ownership may be inferred therefrom, and is open and notorious, it is hostile.   It is not necessary that one should expressly declare his possession to be hostile, or that his use of

the premises should be such as to indicate at all times a hostile occupancy." (See, also, 2 Wood on Limitations, 4th ed., p. 1229.)

Walsh might have given oral utterance to his purpose, but he might have indulged in levity or been misunderstood, but no sensible person could accuse him of having perpetrated a joke, or could have misunderstood his purpose, when he erected a fence ten feet high to inclose the ground of which he was then in possession. Less positive acts might have been sufficient, but we can scarcely conceive of more emphatic means of expressing an intention to claim and hold property.

In 2 Corpus Juris, 122, it is said: "Every possession is adverse which is not in subservience to the title of another either by a direct acknowledgment or by an open or tacit disavowal of right on the part of the occupant, and it is in the latter case only that the law adjudges the possession of one to the benefit of another." In *Chessman* v. *Hale,* 31 Mont. 577, 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254, this court said: "In order to obtain a right by prescription, it is necessary that during the prescriptive period an action could have been maintained by the party against whom the claim is made." Apply this rule to the facts of this case. If, as plaintiff claims, the Bohler fence encroaches upon her land, the same encroachment existed from the time her predecessor Parry secured title; and, whatever may be said of the encroachment, so long as Parry's grantor held title to the north half, certain it is that from the time Walsh repaired and extended the fence in 1898, the Parrys had a cause of action against him and his successor which continued until barred by the statute. (*Bullerdick* v. *Hermsmeyer,* 32 Mont. 541, 81 Pac. 334.)

But it is said by respondent that the possession of defendant [5] and his predecessor was held under the mistaken belief that the fence was upon the true boundary line between the north half of lot 1 and the south half, and that plaintiff and her predecessor likewise labored under the same mistake of fact. There is little, if any, evidence to support this view; but, if it be assumed, it does not aid the respondent. There was no agree-

ment nor understanding between the adjoining owners with respect to the dividing line. In 2 Corpus Juris, page 141, the rule is stated succinctly as follows: ''Where a person, acting under a mistake as to the true boundary line between his land and that of another, takes possession of land of another believing it to be his own, up to a mistaken line, claims title to it and so holds, the holding is adverse, and, if continued for the requisite period, will give title by adverse possession. And the fact that on taking possession he had no intention of taking what did not belong to him, or claimed that he had no desire or intention to take any land belonging to the adjoining owner, or that he would have surrendered possession if he had known that the land in dispute was not within the calls of his deed, or that the owner of the record title was ignorant of the location of the true boundary line or of the fact that the land was his, or supposed that the adverse occupant intended to claim only what he actually owned, or the fact that both owners were mistaken as to the true boundary line, does not affect the operation of the rule.''

In 1 Ruling Case Law, section 48, page 371, the same doctrine is announced as follows: ''It has frequently been held that a possession of land which is the result of ignorance, inadvertence, misapprehension, or mistake, will not amount to an ouster of the true owner, and, consequently, will not ripen into title. The great weight of authority, however, is to the effect that an open, notorious, and hostile possession of property for the statutory limitation period is sufficient for the acquisition of title by adverse possession, and that the fact that the possession was taken under a mistake as to boundary lines is immaterial. In other words, the mistake cannot be pleaded in avoidance of the legal effect of the possession.'' And again in section 50: ''The general rule is that where one in ignorance of his actual boundaries takes and holds possession by mistake up to a certain line beyond his limits, upon the claim and in the belief that it is the true line, with the intention to claim title, and thus, if necessary, to acquire 'title by prescription' up to that line, such possession, having the requisite duration and continuity, will ripen into

title." "Where a person, acting under a mistake as to the true boundary line between his land and that of another, takes possession of land of another, believing it to be his own, up to a mistaken line, claiming title to it and so holding, the holding is adverse, and, if continued for the requisite period, will give title by adverse possession." (1 Cyc. 1038.) A few of the many decided cases approving these rules are *French* v. *Pearce,* 8 Conn. 439, 21 Am. Dec. 680; *Metcalfe* v. *McCutchen,* 60 Miss. 145; *Ricker* v. *Hibbard,* 73 Me. 105; *Walbrunn* v. *Ballen,* 68 Mo. 164; *Hitchings* v. *Morrison,* 72 Me. 331; *Woodward* v. *Faris,* 109 Cal. 12, 41 Pac. 781; *Edwards* v. *Fleming,* 83 Kan. 653, 33 L. R. A. (n. s.) 923, 112 Pac. 836; *Parker* v. *Wolf,* 69 Or. 446, 138 Pac. 463; *Wissinger* v. *Reed,* 69 Wash. 684, 125 Pac. 1030.

In *Jennings* v. *Gorman,* above, this court, without announcing the rule, referred to the first five cases above and to *Grube* v. *Wells,* 34 Iowa, 148, for a discussion of the subject and for the enlightenment of the court below upon a retrial of the case.

The evidence shows beyond controversy that defendant acquired title to the strip in controversy by adverse possession.

The judgment and order are reversed and the cause is remanded, with directions to enter judgment in favor of the defendant.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.