STETSON, APPELLANT, *v.* YOUNGQUIST ET AL., RESPONDENTS.

(No. 5,935.)

(Submitted June 8, 1926.  Decided July 8, 1926.)

[248 Pac. 196.]

*Adverse Possession—Right of Way for Ditch—Easements— Payment of Taxes not Prerequisite.*

Easements—Adverse Possession—Nature of Title.
   1.  The title to an easement acquired by prescription is as effective as though evidenced by a deed.
Easements—Ditches—Right of Way—Adverse Possession.
   2.  Where plaintiff in an action to enjoin defendants from interfering with his use of a ditch constructed by him over their

1.  See 9 R. C. L. 745.
2.  See 9 R. C. L. 781.

lands on the theory that he had a right to do so, had used it openly, visibly and continuously and without being molested in its use by anyone for more than ten years, the presumption obtains that his use was under a claim of right and not by license of the owners, to overcome which presumption the defendants had the burden of showing that his use was permissive only, in the absence of which showing plaintiff's use is deemed to have been adverse to defendants.

Adverse Possession—Rule.

3. Adverse possession of land is one of intention, the intention to be discovered from all the circumstances of the case; assertions by the occupant are not essential, customary acts of ownership and control of the land inconsistent with the title and possession of the true owner, constituting such an invasion of the latter's rights as to have given him a right of action against the claimant during the entire ten-year period, being sufficient.

Same—Easement for Ditch—Payment of Taxes not Prerequisite.

4. An easement for a ditch appurtenant to land is not subject to taxation independently of the land; hence the provision of section 9024, Revised Codes, 1921, that adverse possession shall not be considered established unless the claimant has for the full statutory period of ten years paid the taxes upon the property claimed adversely, has no application where the subject of the adverse possession alleged is a right of way for a ditch.

[1]    Easements, 19 C. J., sec. 88, p. 904, n. 98.
[2]    Easements, 19 C. J., sec. 181, p. 959, n. 51; p. 960, n. 52.
[3]    Adverse Possession, 2 C. J., sec. 211, p. 127, n. 62; sec. 216, p. 128, n. 80, 81; p. 129, n. 82; Easements, 19 C. J., sec. 195, p. 964, n. 29 New; Waters, 40 Cyc., p. 695, n. 39.
[4]    Easements, 19 C. J., sec. 194, p. 963, n. 22; Waters, 40 Cyc., p. 734, n. 32.

*Appeal from District Court, Missoula County; Theodore Lentz, Judge.*

ACTION by H. E. Stetson against Josephine Youngquist and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded, with direction to render judgment for plaintiff.

*Mr. Elmer E. Hershey,* for Appellant, submitted a brief, and argued the cause orally.

Citing: *Hays* v. *DeAtley,* 65 Mont. 558, 212 Pac. 296; *Collins* v. *Thode,* 54 Mont. 405, 170 Pac. 940; *Pioneer Mining Co.* v. *Bannack Gold Min. Co.,* 60 Mont. 254, 198 Pac. 748, 751.

3.  See 1 R. C. L. 706.

*Mr. S. G. Skulason,* for Respondent, submitted a brief.

The question of adverse possession is always one of intention, and the possession must be of such a character as to afford the owner the means of knowing of the claim asserted, possession alone, though open and notorious, being insufficient. (*Blackfoot Land & Development Co.* v. *Burk,* 60 Mont. 544, 199 Pac. 685.) Where an adverse claimant never asserted to anyone any claim to the land in question, and never told the owner of it, the possession must have been of such a character as to give the owner notice of the hostile-claim, else it is not adverse. (*Collins* v. *Thode,* 54 Mont. 405, 170 Pac. 940.)

The case of *Hays* v. *DeAtley* is relied upon by appellant. That case is not in point here. The defendants there claimed, as these respondents claim, that plaintiff's right was nothing more than a license, but they were not successful in that contention because the owner of the land testified that it was his intention that the plaintiff should have a permanent right in the ditch to the extent of a half interest.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an action involving an easement for a ditch which the plaintiff Stetson claims to have obtained by prescription across the lands of defendants Josephine Youngquist and Joseph Youngquist. The object of the suit is to enjoin the defendants from interfering with plaintiff's use of the ditch. The ditch is a lateral leading from a main ditch which diverts water from Rattlesnake Creek in Missoula county. The lateral crosses lot 13 of Cobban's Camp Sites, owned by the defendants, and runs to lots 6 and 10, owned by the plaintiff.

Plaintiff purchased his land in 1909, and in 1911 dug the ditch with which he irrigated that year and each year following. Plaintiff testified that he did not go upon lot 13 with anyone's permission; no one was living there at the time, and his understanding was that he had a legal right to do so. The

real estate man through whom he bought his lots told him he had the right to run the ditch over the lands between his place and the main ditch, but plaintiff's informant did not represent the owners of the intervening lands.

Some time after the ditch was in use, Carl Peterson, one of the owners of lot 13 and a predecessor of defendants, came upon that lot and there had a conversation with the plaintiff with respect to the ditch, but without result. There was some talk to the effect that instead of the open ditch it might become necessary to conduct the water across the lot by means of a pipe which should be covered. We agree with the trial court that the conversation, as related by Peterson, is of doubtful meaning. At any rate, plaintiff continued the use of the ditch without interference, and Peterson paid no further attention to the matter. No one ever questioned plaintiff's right to take the water through there.

Mrs. Youngquist bought lot 13 in 1915, and beginning with 1916 she and her husband used the ditch to irrigate their lot, and they have continued to do so; the plaintiff did not object to their use, and they have used water from the ditch whenever needed by them.

The evidence indicates that the plaintiff and defendants, at all times until the summer of 1925, were upon neighborly terms. Occasionlly they talked of placing pipe in the ditch and covering it. As Mr. Youngquist said: "We agreed off and on that the ditch should be piped and covered up." At one time or another each offered to buy half the pipe, but in the language of the plaintiff they "talked quite a lot about it but never came to a full agreement." In his talks with the defendants plaintiff's right to maintain the ditch was not questioned; the question was "the convenience or advisability of piping through that bench." There was talk about the proposal to pipe, but none about the right to carry the water through the ditch. The plaintiff testified that he himself made the first proposition to pay half the cost of piping, the defend-

ants to use water through the ditch instead of putting in their own lateral. The plaintiff never by word of mouth asserted his claim to an easement for the ditch across defendants' land. He cleaned the ditch each year, but never received permission to do so.

"Q. During that time did you claim the right to do so? A. Why, I claimed it, yes, by going forward as if I—

"Q. (By the Court.) Well, now, in what way did you claim the right? Did you in your mind claim the right? A. Sure I did; sure I did; didn't have a doubt but what it was my legal right.

"Q. You thought you had the right all the time? A. Yes, I did; that was the fact.

"Q. You said you had the right? A. In my own mind, I answered. You asked me—

"Q. You didn't communicate that to anybody, though? A. No, I didn't go and talk to anybody about it."

When defendants bought the place, they understood from Mr. Peterson that they could cover the ditch whenever they desired to do so. It was not Mrs. Youngquist's understanding that they had a right to close up the ditch at any time they wanted to, but she did understand that they could "pipe it and cover it up."

In their answer the defendants pleaded that plaintiff's use of the ditch had been through their license and permission. The court inquired particularly into this phase of the case. Asked to indicate some specific instances in which defendants indicated that plaintiff had their permission to maintain the ditch, Mrs. Youngquist said the only time the parties had a real conversation about it was when they were talking about piping the ditch; it was always agreed that they would pipe it some day and as long as it was not piped they could use it as it was.

"Well, we never really said, 'Now I will just simply give you permission to go through there,' only we never interfered. They had gone and turned the water in, and we had let them

run it through. There was never anything really mentioned about it. They never asked us for permission, and we simply never interfered with them, just let them take it.''

Upon cross-examination Mrs. Youngquist answered questions as follows:

''Q. Now, in these conversations with Mr. Stetson, did he ever offer to buy the right of way that was there? A. He never did.

''Q. Did you ever say that he would have to buy a right of way through there? A. No, sir.

''Q. By what right was he there? A. By his own right.

''Q. Just his own right—he was asserting his own right? A. He was.''

From the time they purchased the land they were told by different people ''that the ditch had no right there.'' They did not take advantage of this gratuitous information until the summer of 1925, when they determined to bring the matter to a head. They then interfered with plaintiff's use of the ditch and this suit resulted. Seemingly the break between them came when plaintiff told Mr. Youngquist if the ditch were to be covered he wanted it covered for the whole length and desired it wholly for himself; the reason given was that plaintiff ''did not want the children throwing stuff into it,'' as had been done near a culvert, causing the ditch to overflow; and plaintiff said ''sometimes the water would be taken to irrigate the strawberries, and instead of turning it back they would turn it out at the headgate.''

During the trial the question arose whether plaintiff had paid taxes upon the ditch or right of way for the ditch. It was shown that plaintiff's land has been assessed as irrigated land at a value of $185 per acre, while adjoining land of the same character, not irrigated, was assessed at $100 per acre. Plaintiff's only means of irrigation was through the ditch in question. The plaintiff's position is that the ditch is appurtenant to the land. The court inquired of plaintiff whether

during the fourteen years that he had gotten water through the ditch across the Youngquist land he had considered he was paying taxes on the right of way, to which plaintiff answered in the negative, saying that the taxes were for irrigated land, and he had not considered "paying any definite tax on a right of way"; he was never conscious that he had paid taxes on the right of way, and never was assessed for a right of way.

The assessor testified that it had not been the practice of his office to assess a right of way; he did not assess any ditches, but assessed irrigated land at a greater value than un-irrigated land. The court said: "Well, I don't think that is proof he assessed this right of way."

The court found for the defendants, and the plaintiff appealed.

"Occupancy for the period prescribed by the Code of Civil [1] Procedure as sufficient to bar an action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all" (sec. 6818, Rev. Codes 1921; *Rude* v. *Marshall*, 54 Mont. 27, 166 Pac. 298; *Hays* v. *DeAtley*, 65 Mont. 558, 212 Pac. 298), and the title to an easement acquired by prescription is as effective as though evidenced by a deed (*Babcock* v. *Gregg*, 55 Mont. 317, 178 Pac. 284).

Plaintiff constructed his ditch upon defendants' land on the [2] theory that he had a right to do so and has ever since maintained the ditch there. He has shown an open, visible, continuous, and unmolested use of the ditch for the period of time sufficient to acquire title by adverse possession. In the absence of any evidence on the subject, the use under such circumstances is presumed to be under a claim of right and not by license of the owner. In order to overcome this presumption, thereby saving his title from encumbrance of an easement, the burden is upon the owner to show that the use was permissive. When the claimant's use has been thus open, continuous, unmolested, and under a claim of right, it is deemed to have been adverse to the owner. (*Glantz* v. *Gabel,*

66 Mont. 134, 212 Pac. 858.) "If the character of the possession is such that a claim of ownership may be inferred therefrom, and is open and notorious, it is hostile. It is not necessary that one should expressly declare his possession to be hostile, or that his use of the premises should be such as to indicate at all times a hostile occupancy." (1 R. C. L. 704; *Rude* v. *Marshall, supra; Shinors* v. *Joslin,* 56 Mont. 10, 180 Pac. 574.)

In *Lamme* v. *Dodson,* 4 Mont. 560, 2 Pac. 298, this court [3] said that the question of adverse possession is one of intention. The intention must be discovered from all the circumstances of the case. As was said in *Rude* v. *Marshall, supra,* the rule, recognized practically everwhere, is aptly stated in 2 Corpus Juris, 128, as follows: "Declarations or assertions by the occupant are not essential to claim of title which may be made by acts alone quite as effectively as by declarations. Customary acts of ownership and control of the land inconsistent with the title and possession of the true owner will suffice, and it has been said that this is the only proof of which a claim of title to a very large proportion of property is susceptible." (*Blackfoot Land Dev. Co.* v. *Burks,* 60 Mont. 544, 199 Pac. 685.) Plaintiff's use was not only open and visible to all the world, but the owners of the servient estate at all times had actual notice of it. (*Glantz* v. *Gabel, supra.*)

The testimony of the defendants establishes beyond question that the plaintiff did not occupy the premises through their license or permission. It is clear that the plaintiff did not come upon the land in question under authority of the owners. Plaintiff's occupancy of that portion of defendant's land over which the ditch runs was such an invasion of the rights of the owners of the land as to have given them a right of action against plaintiff during the entire period prescribed by the statute—ten years. This element in the acquisition of title by prescription (*Chessman* v. *Hale,* 31 Mont. 577, 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254; *Smith* v. *Duff,* 39 Mont.

374, 133 Am. St. Rep. 582, 102 Pac. 981; *Boehler* v. *Boyer,* 72 Mont. 472, 234 Pac. 1086; *Zosel* v. *Kohrs,* 72 Mont. 564, 234 Pac. 1089) the plaintiff has established conclusively. He has overcome the presumption that his possession was held in subserviency to the legal title. (Sec. 9018, Rev. Codes 1921; *Collins* v. *Thode,* 54 Mont. 405, 170 Pac. 940; *Northern Pacific Ry. Co.* v. *Cash,* 67 Mont. 585, 216 Pac. 782.)

It would seem from the record that the court deemed the [4] inquiry as to whether the plaintiff had paid taxes upon the right of way, or easement, to be a material one. This view is erroneous. Unquestionably the ditch in question is appurtenant to plaintiff's land. (*Pioneer Min. Co.* v. *Bannack Gold Min. Co.,* 60 Mont. 254, 198 Pac. 748.) The precise point was determined by way of illustration in *Hale* v. *County of Jefferson,* 39 Mont. 137, 101 Pac. 973, in which Mr. Chief Justice Brantly said: "A ditch and water right, attached to agricultural lands, add a large element of value to them, by contributing to their productiveness, which, in turn, determines their actual value. They are taxed when lands are taxed upon their value thus increased."

The plaintiff's interest is a mere right of way, an easement in the land over which the ditch passes, which is attached to plaintiff's lands.

Section 9024, Revised Codes of 1921, which the court evidently had in mind, reads as follows: "In no case shall adverse possession be considered established under the provision of any section or sections of this Code unless it shall be shown that the land has been occupied and claimed for a period of ten years continuously, and the party or persons, their predecessors and grantors, have, during such period, paid all the taxes, state, county, or municipal, which have been legally levied and assessed upon said land."

In the comparatively recent case of *Verwolf* v. *Low Line Irrigation Co.,* 70 Mont. 570, 227 Pac. 68, we held that the foregoing section does not have any application to a situation

like this. We there said that a water right appurtenant to land is not subject to taxation independently of the land to which it is appurtenant, and the same applies to an easement for a ditch appurtenant to land.

Upon the whole case we are satisfied that the plaintiff is the owner of an easement across the lands of the defendants for his ditch, and the court was in error in holding otherwise.

The judgment is reversed, and the cause is remanded to the district court of Missoula county, with directions to render judgment in favor of the plaintiff.

*Reversed and remanded.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and MATTHEWS, concur.