DA 06-0435

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 347

NAOMI R. LEISZ,

      Plaintiff and Appellant,

  v.

AVISTA CORPORATION, and BEVERLY J. REVIER,
PATSY K. MEREDITH, BETTY R. TAYLOR, GARY N.
REVIER, LARRY D. REVIER, and JOHN D. REVIER,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                   In and For the County of Sanders, Cause No. DV 2003-002
                   Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Naomi R. Leisz, (Pro Se), Leisz Law Office, P.C.,  Thompson Falls,
            Montana

      For Appellee AVISTA Corporation:

            Christian T. Nygren, Milodragovich, Dale, Steinbrenner & Binney, PC.,
            Missoula, Montana

      For Appellees Reviers, Meredith and Taylor:

            Robert G. Olson, Frisbee, Moore & Olson, Cut Bank, Montana

Submitted on Briefs:  March 28, 2007

Decided:  December 18, 2007

Filed:

_____

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Appellant Naomi R. Leisz (Leisz) appeals an order of the Twentieth Judicial District Court, Sanders County, denying her an easement across tracts of real property owned by Appllees Avista Corporation (Avista), and Beverly J. Revier, Patsy K. Meredith, Betty R. Taylor, Gary N. Revier, Larry D. Revier, and John D. Revier (collectively Reviers). We affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     In October 2000 Leisz purchased a forty acre tract of property (Leisz Property) in Trout Creek, Montana. Leisz acquired this property in fee simple from a man named Dennis Raymond who had inherited it 2000 upon the death of his uncle. The Leisz Property was originally homesteaded by a man named George Gros. Gros obtained a Patent to this property from the U.S. Government in 1921. According to the record, Gros and other individuals were known to have lived on that property into the late 1930's or early 1940's.

¶3     From this early period of occupancy until 1982, no one established a permanent residence on the Leisz Property for any significant period of time. Beginning in 1982, an individual named Doy Morket lived on the Leisz Property with the permission of the then-owner of the property, Thomas Pope. Morket lived on the property in a school bus, and then a trailer, with his wife, nephew, and son. They did not have running water or electricity. Morket and his family lived on the property as caretakers. Although it is difficult to fix the length of their occupancy with precision because Morket had a

3

drinking problem at the time which made the recollection of his dates of tenure hazy, the record indicates it began sometime in 1982 or 1983, and ended in either 1988 or 1989.

¶4 In addition to the occupancies of Gros and Morket, the Leisz Property was also used for logging, cattle grazing, and hay harvesting. Additionally, members of the public accessed the property for hunting, mushroom picking, the staging of search and rescue operations, outfitting operations, and to reach Forest Service land.

¶5 North of the Leisz Property is Marten Creek Road. Between that road and the Leisz Property are parcels of land owned by Avista (Avista Property) and the Reviers (Reviers Property). The Avista Property surrounds Marten Creek Road, extending southward approximately 150 feet. Just south of the Avista Property sits the Reviers Property, comprising roughly 241 acres. The Northern Pacific Railroad originally acquired these two properties by patent from the U.S. Government in 1906. In 1927, Northern Pacific conveyed to Alburn S. Ainsworth the property now owned by the Reviers. The Reviers purchased their property from another individual in 1971. The Avista Property passed through different hands and was ultimately conveyed to Washington Water Power Company. When Avista bought out Washington Power in 1985, it acquired the Avista Property. Both of these properties are comprised of unenclosed and unimproved lands, and there have never been any structures or homes built on them.

¶6 As one heads west on Marten Creek Road along the Avista Property, one encounters two dirt roads branching off Marten Creek Road in a southward direction. These two roads are separated by a distance of 165 feet. They cross the Avista Property

4

and converge at a point approximately 255 feet within the Reviers Property. From that point they merge, and form another dirt road (Access Road) which heads south through the Reviers Property, continuing for approximately three-quarters of a mile until it reaches the Leisz Property. From the homestead days until sometime in the 1980's, the eastern most access from Marten Creek Road (East Access) was the only route which led from Marten Creek Road down to the Leisz Property. Sometime in the early or mid-1980's, the westernmost access from Marten Creek Road (West Access) was created. The West Access then became the primary access to the Leisz Property, because it was on higher and more solid ground than the East Access, and would not become excessively muddy under wet conditions. From that time onward, access to the Leisz Property began at the West Access, and continued down through the Access Road. The East Access, which represented the original route used to reach the Leisz Property, ceased to be used and eventually was overgrown with vegetation.

¶7 In October of 2002, Leisz contacted the Reviers and asked them if she could use the Access Road to reach her property. They denied her request. Shortly thereafter, Leisz obtained a bulldozer and other heavy equipment and cut a swath through the Reviers Property from the East Access to the Access Road. Then, in January of 2003, she filed suit against the Reviers in the Twentieth Judicial District, Sanders County claiming an easement for access to her property under the following four legal theories: (1) a private easement by prescription, (2) public easement by prescription, (3) granted or reserved easement, and (4) an implied easement by necessity. Avista was subsequently

joined by Leisz as a party defendant. According to the complaint and the exhibit attached thereto, the easement claimed by Leisz coincided with the original route used to reach her property; i.e., a route beginning at the East Access down through the Access Road. Both Avista and the Reviers opposed Leisz, arguing she did not have an easement to reach the Access Road, from either the West or East Access.

¶8 The matter was litigated before the District Court in Sanders County. A bench trial was held on November 4, 2005. During trial, the District Court heard testimony concerning the historical use of the road, and also examined the deeds to each of the properties. The District Court issued findings of fact and conclusions of law, ultimately denying Leisz's claims under all four legal theories. We will refer to those findings and conclusions in more detail below. The gist of the District Court's decision, however, was that Leisz failed to prove the existence of a public or private prescriptive easement over the Access Road by clear and convincing evidence, that no easement had been granted or reserved under the terms of the deed to the Leisz Property, and that there was no implied easement by necessity because Leisz failed to demonstrate unity of ownership among all three properties. Leisz now appeals this decision.

## ISSUES

¶9 We restate the issues on appeal as follows:

¶10 **Issue One:** Did the District Court err in concluding that Leisz failed to prove the existence of a private prescriptive easement burdening the Avista and Reviers Properties?

¶11 **Issue Two:** Did the District Court err in concluding that Leisz failed to prove the existence of a public prescriptive easement burdening the Avista and Reviers Properties?

6

¶12    **Issue Three**: Did the District Court err in concluding that Leisz failed to prove the existence of an easement by grant or reservation burdening the Avista and Reviers Properties?

¶13    **Issue Four**: Did the District Court err in concluding that Leisz failed to prove the existence of an implied easement by necessity burdening the Avista and Reviers Properties?

## STANDARD OF REVIEW

¶14    We review a district court's findings of fact to determine if they are clearly erroneous. *Waering v. Schreckendgust*, 280 Mont. 196, 202-03, 930 P.2d 37, 41 (1996). A factual finding is clearly erroneous when it is not supported by substantial evidence, the trial court has misapprehended the effect of the evidence, or a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Public Lands Access Assn., Inc. v. Boone and Crockett Club Found., Inc.*, 259 Mont. 279, 283, 856 P.2d 525, 527 (1993). "The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct." *Gelderloos v. Duke*, 2004 MT 94, ¶ 22, 321 Mont. 1, ¶ 22, 88 P.3d 814, ¶ 22.

## DISCUSSION

¶15    **Issue One:** Did the District Court err in concluding that Leisz failed to prove the existence of a private prescriptive easement burdening the Avista and Reviers Properties?

¶16    We begin our discussion by reference to the law of prescriptive easements. "To establish an easement by prescription, the party claiming the easement must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the claimed easement

7

for the full statutory period of five years." *Lemont Land Corp. v. Rogers*, 269 Mont. 180, 183, 887 P.2d 724, 726 (1994). The burden is on the person claiming the easement to prove these elements by clear and convincing evidence. *Waering*, 280 Mont. at 206, 930 P.2d at 43. While use by the claimant's predecessor in title may be used by the claimant to prove the existence of a prescriptive easement, *Rude v. Marshall*, 54 Mont. 27, 29-30, 166 P. 298, 299 (1917), unexplained use of an easement cannot form a basis for a claim of prescriptive right. *Warnack v. Coneen Family Trust*, 266 Mont. 203, 212-13, 879 P.2d 715, 721-22 (1994). Moreover, prescriptive easements cannot be relocated by verbal or tacit consent. *Glenn v. Grosfield*, 274 Mont. 192, 196, 906 P.2d 201, 204 (1995).

¶17 Because the theory of prescriptive easement is based on adverse use, if the owner of the servient estate shows that use was permissive, no such easement can be acquired. *Boone and Crockett Club*, 259 Mont. at 283-84, 856 P.2d at 527. However, if the claimant satisfies his or her burden, "a presumption of adverse use arises and the burden shifts to the landowner affected by the prescriptive claim to establish that the claimant's use was permissive." *Waering*, 280 Mont. at 209, 930 P.2d at 45.

¶18 The District Court found that Leisz failed to establish by clear and convincing evidence the existence of a private prescriptive easement over the Access Road. Because Leisz's claim for a private prescriptive easement did not rest upon her use, but rather depended upon the uses made of the Access Road by her predecessors in title, it was on those prior uses that the District Court properly focused its analysis. In doing so, the Court separated for purposes of analysis the uses made in the homesteading days, and those uses occurring from the 1980's forward.

¶19   With respect to use from the homesteading period prior to the 1980's, the District Court found that there was only "periodic, unexplained use of the access road in question . . . ," and that such use was insufficient to establish a prescriptive claim of right. *Warnack*, 266 Mont. at 212-13, 879 P.2d at 721-22.   With respect to Morket's tenure on the Leisz Property beginning around 1982, the District Court did find that he used the Access Road on a regular basis to reach the property.   However, the District Court ultimately found that his use of the Access Road was not open and notorious because it was never brought to the attention of the Reviers that he and his family were actually using the Access Road on a daily basis.   The District Court concluded that the Reviers only visited their property periodically, and although they saw a bus on the Leisz Property, they never saw evidence that someone was living there.   As a result, the District Court concluded Morket's use of the Access Road "was not of such a character so as to give Reviers actual notice of a hostile claim, nor was his use of such a character so as to raise a presumption of notice."

¶20   Additionally, the District Court concluded that Morket's use of the Access Road was essentially permissive in nature and therefore not hostile to Avista's or the Reviers' rights.   The District Court, citing to Richard R. Powell, *Powell on Real Property* vol. 4, § 34.10[2][c], 34-95 (Michael Allan Wolf, ed., Lexis 2000),[1] adopted the principle that "[w]hen the land is not actively used by its owner, use is better regarded as permissive

---

[1] The District Court cited to *Powell's* for the proposition that when a claimant claims a prescriptive right over lands that are unimproved and not actively used by their owners, a presumption arises that such use is permissive until shown to be otherwise. *Powell* vol. 4, at § 34.10[2][c], 34-96 (collecting authorities).

until affirmatively shown to be adverse." Because the Reviers Property was only visited and used sporadically by the Reviers, and was open and unimproved, use made of it by Leisz's predecessors in title was presumed permissive. The District Court thereby concluded Leisz had failed to overcome a presumption of permissive use. The District Court further found that Leisz acknowledged the permissive nature of her predecessors' use of the Access Road based on the fact that she asked permission from the Reviers to use it to reach her property in October 2002.

¶21 More importantly, the District Court found that the Access Road itself was relocated during the mid-1980's. The original route of the Access Road had been via the East Access, continuing to the Access Road at its present location down to the Leisz Property. The West Access, according to the District Court's findings, was a new location made by individuals at the behest of the Reviers in order to reach the Reviers Property to conduct logging operations there, and was not a part of the original route to the Leisz Property. The District Court found that "[t]he old access road is grown over and has not been used regularly since the mid-1980's . . . ," as demonstrated by Forest Service aerial photographs taken during the 1990's. In fact, the District Court found that the original course of the Access Road was visible only because Leisz bulldozed it in 2002.

¶22 This factual finding was significant because it led the District Court to conclude that any claim Leisz had for a prescriptive easement after 1982 was in any event interrupted by the relocation of the Access Road in the mid-1980's. As the District Court correctly noted, the location of a prescriptive easement cannot be changed by verbal or

tacit consent of the parties. *Glenn*, 274 Mont. at 196, 906 P.2d at 204. Because Leisz's claim of a prescriptive right was based on use of the original route of the Access Road from the East Access, when that route was relocated to the West Access, any claim of right based on use by Morket was interrupted. Thus, her prescriptive claim of right could only be based on use of the West Access to reach the Access Road after 1985, the date of the relocation. Since Leisz failed to provide clear and convincing evidence that private use of that route ripened into a claim for a prescriptive right after that date, her claim for an easement failed.

¶23 Lastly, the District Court concluded that even if Leisz did demonstrate the existence of prescriptive easement, she failed to prove, by clear and convincing evidence, the scope of that easement. The District Court noted that testimony at trial was somewhat conflicting concerning the width of the road, and, further, that Leisz presented no evidence indicating that utility services had ever been established on the Leisz Property.

¶24 Leisz appeals both the factual findings and conclusions of law of the District Court. First, Leisz argues that the District Court's factual finding that there was periodic, unexplained use of the original route of the Access Road via the East Access prior to the 1980's, is clearly erroneous. Leisz points out that Ron Haviland, a lifetime resident of Trout Creek whose deposition was admitted into evidence, testified to the existence of the original route of the Access Road beginning in the 1920's and continuing into the late 1930's. Mr. Haviland testified that families living on the Leisz Property used the original route to reach their property, and that considerable effort went into creating and maintaining the Access Road, including the use of horse-drawn grading equipment and

11

snowplows.  Another individual, Edward Reeser, testified at trial that a family was living on the Leisz Property at the homestead site as late as 1940.  Leisz argues it was clearly erroneous to conclude, in the face of this evidence, that homestead-era use of the road was "periodic and unexplained."  As a result, Leisz argues she presented sufficient evidence to show that such use was adverse, and that the District Court erred in failing to conclude that she raised a presumption of adverse use which the Reviers and Avista must now rebut.

¶25    Second, Leisz argues the District Court overlooked evidence in the record which demonstrated the establishment of a prescriptive easement from 1982 until the present.  Leisz maintains Morket's use of the Access Road was open and notorious, insofar as Beverly Revier, one of the Appellees, was aware that someone was living on the Leisz Property and using the Access Road to reach it.  Leisz argues that Morket was not obligated to give separate notice to the Reviers or Avista that he was using their properties to reach his dwelling on the Leisz Property, because his use, by itself, constituted such notice.  Leisz argues the District Court erred in its application of the law to suggest that Morket was under some such duty to notify the Reviers and Avista that he intended his use to be adverse.  Leisz argues this issue should be remanded to the District Court.

¶26    Leisz further asserts the District Court's finding that the road was relocated in the mid-1980's was clearly erroneous.  Instead, Leisz maintains both the West and East Accesses were already established prior to the time Morket began living on the Leisz Property, and that his use established a private prescriptive easement to which she may

12

lay claim. Leisz argues that both the East and West Accesses were used by Morket and others to reach the Access Road, and that a prescriptive easement was established over both.

¶27 Finally, Leisz asserts that the District Court erred in concluding the use of the Access Road by her predecessors in title was presumed to be permissive because the Reviers and Avista Properties were not actively used. Leisz argues that this approach misstates the law regarding prescriptive easements in Montana. Instead, Leisz argues she met her burden in establishing that historical uses of the road were not permissive and thus the District Court should have shifted the burden to the Reviers and Avista to show that such use was permissive. Leisz asserts that failure to make this finding was reversible error, and that this Court should remand this issue back to the District Court with instructions which set forth the applicable law.

¶28 Avista and the Reviers urge us to affirm the District Court. Avista asserts that the District Court correctly concluded that any prescriptive right established to use the Access Road was interrupted when that road was relocated in the mid-1980's, and that this issue presented a question of fact properly left to the District Court. They claim that four individuals testified the West Access did not exist when Morket began using the property in 1982, and was instead created in the mid-1980's. The District Court, they argue, determined that these witnesses were more credible than Morket, and we should not disturb the District Court's findings on this point. Further, Avista maintains that whether use of the Access Road was open and notorious, recreational, or permissive, are questions properly decided by the District Court and that they should not be disturbed on

13

appeal. The Reviers largely adopt these arguments, adding further that Leisz's act of asking permission to use the Access Road demonstrates that she understood her right to use that road was subordinate to the rights of the Reviers.

¶29 The first question we address is whether the District Court's finding that the Access Road was relocated in 1985 is clearly erroneous. We conclude that it was not. Leisz claims that the East and West Accesses were both used by Morket during the entire span of his tenure on her property, and that both the West and East Accesses were in use throughout the entire time Morket lived there. Morket's testimony confirms this view. Leisz also claims that the testimony of George Schopp affirms the truth of this statement because he testified at the November 2005 hearing that the West Access had been there for "right close to 20 years." But as Avista and the Reviers note, other individuals testified that the West Access was created in 1985, at the behest of the Reviers so their property could be logged. And, in fact, Schopp's testimony fixes the date of the creation of the West Access closer to 1985 than 1982, the date when Morket began living on the Leisz Property.

¶30 After hearing testimony on both sides of the issue, the District Court discounted Morket's testimony that the West and East Accesses were in existence when he started living on the Leisz Property in 1982, and found credible the testimony indicating that the West Access was created in 1985. Determinations concerning the credibility of witness testimony are left primarily to the district court, and we will not second-guess the district court when presented with conflicting testimony. *Point Serv. Corp. v. Myers*, 2005 MT 322, ¶ 28, 329 Mont. 502, ¶ 28, 125 P.3d 1107, ¶ 28. Given the fact that Morket admitted

14

his recollection of dates was hazy due to a drinking problem he had at the time, we can hardly say that the District Court's decision to find other testimony more credible was clearly erroneous.

¶31    The next question concerns the legal significance of the finding that the Access Road was relocated.  The District Court concluded that the relocation of the road interrupted any claim of prescriptive right Leisz may have had to use the Access Road after 1982.  We agree that this is true with respect to Morket's use, because even assuming that Morket lived on the Leisz Property into 1989, which is the latest possible date of his tenure, see ¶ 3, he could have used the West Access at best for four years.  Thus, Morket's use of the West Access was for less than the statutory period of five years, even assuming it satisfied the other elements for a claim of prescriptive right.

¶32    Similarly, the evidence before the District Court suggested that once the West Access came into use, the East Access was no longer used.  Under these circumstances, it falls on Leisz to prove by clear and convincing evidence that Morket continued to use the East Access in a manner that establishes a claim of prescriptive right.  We agree with the District Court that Leisz has failed to meet this burden by clear and convincing evidence.  If anything, Morket's testimony indicates that the East Access was used infrequently, if at all, after the West Access came into use.  Thus, Morket's use of the East Access failed to satisfy the requirements for the establishment of a prescriptive easement.

¶33    However, whether the relocation of the Access Road in 1985 affects a claim of prescriptive right based upon prior use—i.e., use in the homestead days—presents a different question and compels a different result.  Clearly, such relocation in 1985 can

15

have no legal significance upon uses occurring earlier in time. Accordingly, we must return to the District Court's findings as to whether use of Access Road prior to 1982 gave rise to a claim of a private prescriptive easement. Specifically, the District Court found that such use was both "periodic and unexplained," and the District Court therefore declined to analyze that use any further. Leisz argues this finding was clearly erroneous and we agree.

¶34 The District Court heard evidence from two long-time residents of the Trout Creek area to the effect that persons lived at the site of the Gros homestead beginning in the 1920's, and continued to do so into the late 1930's and possibly 1940's. These individuals testified that the Access Road via the East Access was used during this time by the individuals who lived there. Additionally, in his deposition Mr. Haviland stated that early occupants of the Gros homestead used horse-drawn graders and snow plowers to maintain the Access Road. This testimony was uncontradicted at trial, and the District Court made no findings indicating that this testimony was not credible. Accordingly, we are left with the firm conviction that a mistake has been made here. Private use of the Access Road prior to 1982 was not "unexplained" but was, in fact, explained. The road was used by the former inhabitants of what is now the Leisz Property to reach their homes. This being so, the unanswered question is whether that use satisfies the elements of a prescriptive easement.

¶35 Accordingly, we reverse the District Court on this issue and remand for further proceedings. Because the use of the Access Road prior to 1982 was not unexplained, the District Court must issue findings of fact and conclusions of law on whether private use

16

of the Access Road via the East Access (i.e., via the original route) prior to 1982 satisfied the elements for a prescriptive easement. If so, such use would raise a presumption of adversity which Appellees would then be required to rebut by a showing that such use was permissive. *Waering*, 280 Mont. at 209, 930 P.2d at 45.

¶36 **Issue Two:** Did the District Court err in concluding that Leisz failed to prove the existence of a public prescriptive easement burdening the Avista and Reviers Properties?

¶37 In Montana, the public may acquire a prescriptive easement which burdens private land. *Powell Co. v. 5 Rockin' MS Angus Ranch, Inc.*, 2004 MT 337, ¶ 46, 324 Mont. 204, ¶ 46, 102 P.3d 1210, ¶ 46. "To establish the existence of a public road by prescription it must be shown that the public followed a definite course continuously and uninterruptedly for the prescribed statutory period together with an assumption of control adverse to the owner . . . ." *Powell Co.*, ¶ 46 (quotation omitted). The elements for the public easement must also be proven by clear and convincing evidence and are identical to those for a private prescriptive easement, except that in the case of a public easement the claim of right is based upon public use. *McCauley v. Thompson-Nistler*, 2000 MT 215 ¶ 37, 301 Mont. 81, ¶ 37, 10 P.3d 794, ¶ 37. "Generally, seasonal use by hunters, fishermen, hikers, campers, use by neighbors visiting neighbors, and persons cutting Christmas trees and gathering firewood are not sufficient to establish [prescriptive] use." *McCauley*, ¶ 38 (quotation omitted).

¶38 The District Court concluded that public use of the Access Road was insufficient to give rise to a prescriptive claim of right because it was only periodic, recreational use for hunting, mushroom picking, and access to Forest Service land. The District Court did

find the Reviers knew that such was occurring during the late 1970's and 1980's because they posted "No Hunting" and "No Trespassing" signs, which were removed by unknown individuals. However, the District Court ultimately concluded that Leisz failed to demonstrate by clear and convincing evidence that this use gave rise to a prescriptive claim of right.

¶39 Leisz asserts that the District Court erred in concluding that the only uses of the Access Road after the mid-1980's were recreational in nature. Leisz argues that in addition to recreational use there was logging, cattle grazing, professional outfitting, and search and rescue operations conducted by members of the public. Leisz asserts that the instant case is similar to *Granite Co. v. Komberec*, 245 Mont. 252, 800 P.2d 166 (1990), *overruled on other grounds by Warnack*, 266 Mont. 203, 879 P.2d 715, where we held that public uses such as mining, logging, timber management, fire protection, and snowmobiling access were sufficient to establish a public prescriptive easement. *Granite Co.*, 245 Mont. at 258, 800 P.2d at 170. Leisz argues that while she put forth evidence of qualifying uses, namely the logging, grazing, outfitter and search and rescue operations, the District Court failed to properly address this claim in its findings of fact and conclusions of law. Leisz asks us to remand this issue to the District Court.

¶40 We decline Leisz's invitation to reverse the District Court's conclusion that she was not entitled to a public prescriptive easement. Other than desiring more specific findings of fact, Leisz points to no evidence demonstrating that she established a public prescriptive easement, that the District Court's findings of fact were clearly erroneous, or that its conclusions of law were incorrect. In fact, a review of the record shows that,

18

while some individuals did testify about logging operations, cattle grazing, hay harvesting, and outfitting and search and rescue operations on the Leisz Property, none of this evidence was sufficient to meet Leisz's burden here. The logging, for instance, occurred on two or three occasions, in separate years, for time periods of six months at the maximum. Cattle were grazed on the Leisz Property during a fifteen year period, but only in spring time and usage patterns of the Access Road were never demonstrated by clear and convincing evidence. Similarly, the property was used for hay harvesting over a six year period in the summertime, but only for a period of three weeks at a time. Moreover, the outfitter and search and rescue operations were of a sporadic or infrequent nature. Thus, the facts in this case are not similar to *Granite Co.* insofar as Leisz has not shown "that the public followed a definite course continuously and uninterruptedly for the prescribed statutory period together with an assumption of control adverse to the owner . . . ." *Granite Co.*, 245 Mont. at 257, 800 P.2d at 169 (quotation omitted).

¶41 Accordingly, the District Court did not err in rejecting Leisz's claim for a public prescriptive easement.

¶42 **Issue Three**: Did the District Court err in concluding that Leisz failed to prove the existence of an easement by grant or reservation burdening the Avista and Reviers Properties?

¶43 Leisz argues the District Court erred in concluding that she does not have an easement by grant or reservation burdening the Avista and Reviers Properties. Leisz notes that the deeds conveying title to Reviers and Avista contain the following language: "being subject, however, to an easement in the public for any public roads heretofore laid

19

out or established, and now existing over and across any part of the premises." Leisz correctly notes that easements can be created by grant or reservation, see *State v. Cronin*, 179 Mont. 481, 587 P.2d 395 (1978), and argues that she has shown continuing public use of the Access Road that is not permissive, thus entitling her to an easement by grant or reservation under the deed.

¶44 Again we affirm the District Court. The District Court correctly concluded that Leisz does not have an easement to use the Access Road by grant or reservation in the deeds. In the first instance, the Access Road is not a county road and has never been maintained by the public. Nor is this road specifically identified in or contemplated by the deed. *Cf. Cronin*, 179 Mont. at 487, 587 P.2d at 399. Thus, Leisz's claim here is simply a rehashing of her argument that she has a public prescriptive easement to use the Access Road. Because she does not, the District Court did not err in rejecting her claim for an easement by grant or reservation.

¶45 **Issue Four**: Did the District Court err in concluding that Leisz failed to prove the existence of an implied easement by necessity burdening the Avista and Reviers Properties?

¶46 The District Court found there was no implied easement by necessity in this case because Leisz failed to prove unity of ownership among all three properties. Leisz argues this was error because all properties were owned by the U.S. Government in 1906. Leisz argues that *Leo Sheep Co. v. United States*, 440 U.S. 668, 99 S. Ct. 1403 (1979), stands for the proposition that when Congress granted lands to the railroad companies, it reserved an implied easement for itself to pass over odd-numbered sections of land in

20

order to reach the even-numbered ones. *Leo Sheep*, 440 U.S. at 678, 99 S. Ct. at 1409. Leisz claims that her property is an even-numbered tract, the Avista and Reviers Properties were formerly odd-numbered, and thus she may claim an implied easement under *Leo Sheep*.

¶47    We disagree and affirm the District Court. An implied easement by necessity is established when the claimant demonstrates: (1) unity of ownership, and (2) strict necessity at the time that the unified tracts are severed. *Albert G. Hoyem Trust v. Galt*, 1998 MT 300, ¶ 18, 292 Mont. 56, ¶ 18, 968 P.2d 1135, ¶ 18. In the first instance, Leisz citation to *Leo Sheep* is puzzling because she relies on a holding from the Tenth Circuit which was overruled by that decision. *Leo Sheep*, 440 U.S. at 688, 99 S. Ct. at 1414. In fact, the U.S. Supreme Court explicitly held that the doctrine of implied easements by necessity was inapplicable in that case, and that the Government could not claim an implied easement by necessity. *Leo Sheep*, 440 U.S. at 679-82, 99 S. Ct. at 1410-11.

¶48    However, even assuming that unity of ownership among the three properties is demonstrated by the fact the U.S. Government once owned all these lands at one time, Leisz has failed to demonstrate strict necessity at the time the tracts were severed, and thus has not proven the existence of an implied easement by necessity. The record indicates the Avista and Reviers Properties were acquired by Northern Pacific from the U.S. Government in 1906, while the Leisz Property was acquired by Gros from the U.S Government in 1921, See ¶¶ 2, 4. When the tracts were severed no one was living on the Leisz Property; therefore there was no necessity to reach it. Because Leisz has not shown that strict necessity to access her property existed in 1906, she fails to prove an implied

21

easement by necessity.  Therefore, the District Court's conclusion that Leisz failed to establish an implied easement by necessity was correct.

## CONCLUSION

¶49    For these reasons, we affirm the District Court as to Issues 2, 3, and 4.  However, we reverse and remand as to Issue 1 for further proceedings as herein set forth.


/S/ PATRICIA COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE