ROBERTSON et al., respondents, *v.* SMITH et al., appellants.

STATUTORY CONSTRUCTION—*mining act of congress—rights of miners.* Section 9 of the general mining act of the United States, approved July 26, 1866, grants to the proper persons an easement upon the mineral lands of the public domain, which they may appropriate according to the local rules and customs of miners in the mining district in which the same may be situated, and thereby legalizes the mining upon the public lands of the United States for the precious metals.

POSSESSION OF MINING GROUND—*presumption—mining customs.* It will be presumed, in the absence of evidence, that the parties in the possession of mining claims hold them according to the local rules and customs of the miners in the district.

STATUTORY CONSTRUCTION—*grants to miners—implied right.* The grants made by congress in the mining law of July 26, 1866, should be liberally construed in favor of the grantee; and the grant of the right to occupy and explore the mineral lands of the United States carries with it the implied right to extract the precious metals found by the occupant and explorer.

RULES OF MINERS—*vested rights.* The right to occupy, explore and extract the precious metals in the mineral lands of the United States becomes vested in the party who locates these lands according to the local rules and customs of the mining district in which they are situated.

TITLE TO MINING CLAIMS—*rights of miners.* The fee in the land, on which mining claims are located, remains in the United States, but the rights of miners are incident to the fee and have been carved out of it.

STATUTORY CONSTRUCTION—*grant by congress for highways—compensation.* Section 8 of the general mining act of congress of July 26, 1866, grants to the public a right of way for the construction of highways over public lands, which have not been otherwise appropriated; but neither the county commissioners nor the territorial legislature can take land for highways in

which miners have acquired vested rights, without giving a just compensation for damages to those rights.

STATUTORY CONSTRUCTION — *reserved rights by congress — miners' customs.* The clause in section 1 of the general mining act of July 26, 1866, "subject to such regulations as may be prescribed by law," is a reservation of the right by congress to regulate by legal enactments the manner and conditions under which claims must be worked by miners. The clause in the same section, "subject also to the local customs or rules of miners in the several mining districts," relates to the rules, customs and regulations of miners regarding the location, user and forfeiture of mining claims.

VESTED RIGHTS OF MINERS — *compensation — highway.* Lands of the United States, in which miners have vested rights, cannot be taken for the public use for a highway, if there is no act of the legislature providing for a just compensation to the miners.

*Appeal from the Third District, Meagher County.*

THE judgment in this action was rendered in July, 1871, by WADE, J. The other facts are stated in the opinion.

G. G. SYMES and S. ORR, for appellants.

Persons mining on the public domain before the act of congress of July 26, 1866, were trespassers and could have no possessory rights. Yale on Water Rights, 331–334; *United States* v. *Gear*, 3 How. 120; *Cotton* v. *United States*, 11 id. 229. The act of congress of July 26, 1866, expressly reserves from possessory rights granted to miners the right of way over the public domain for roads. 14 U. S. Stat. 253, § 8.

The legislature can lay out and establish roads by an express act, or by delegating the power to inferior tribunals. The legislature of 1866 incorporated "The Eldorado and Diamond City Wagon Road Company." The law was annulled by congress and re-enacted in 1867. Acts 1867, 127. This made the road a public highway. In 1869 the legislature repealed the franchise and made the road a free public highway. Acts 1869, 112. The legislature of 1867 made all roads then laid out or traveled public highways. Acts 1867, 89. These acts make a legal public highway over the respondents' mining ground.

No compensation was required to be made to the owners of the mining ground. The government grants the right

of way to the community and expressly reserves from individuals any possessory right that would conflict with it. 14 U. S. Stat. 253, § 8.

Appellants' right to maintain a suit to prevent travel on the road is barred by the statute of limitations. Acts 1865, 467.

The alleged agreement of respondents' predecessors in interest with persons when the road was constructed, cannot affect the interests of the community, who have the right to travel the road. If this is not a lawful road, there is not a road in the Territory that may not be closed. The road was duly laid out by the county commissioners and the supervisor, respondent Smith, was lawfully empowered to keep the road in repair. Acts 1865, 501; Acts 1869, 112.

CHUMASERO & CHADWICK, for respondents.

Respondents were in possession and working their mining ground long before the road was thought of. The toll-road was incorporated after respondents had located and taken possession of the ground. Acts 1867, 127. Respondents gave the toll-road company the privilege of laying out and using the road over their ground until they wanted it for mining purposes.

Miners have always had an implied license from the government to mine for precious metals on the public lands. The act of congress of July 26, 1866, recognizes this right of miners. 14 U. S. Stat. 253. It recognizes these mining claims as property.

The taking of private property for public uses will be enjoined until provision for compensation be made by law and compensation paid. 5th Amend. U. S. Const.; *Bonaparte* v. *Camden & Amboy Railroad Co.*, Bald. 205; *Atkinson* v. *Philadelphia & T. Railroad Co.*, 14 Haz. Penn. Reg. 10.

There is no law in Montana providing for laying out roads. There is only one provision relating thereto. Acts 1865, 501, § 14, cl. 8.

The legislature had no power to declare by a repealing

enactment that the road, which had been laid out and used by the sufferance of miners, should be a public highway without providing compensation. Where compensation for land taken for a road by a county does not precede the taking, the entire action of the county authorities is void. *Johnson* v. *Alameda County*, 14 Cal. 106.

All statutory modes of divesting titles are strictly construed and must be strictly pursued. *Beasley* v. *Mountain L. Co.*, 13 Cal. 306 ; Sedgw. Stat. L. 319 ; Dwarrs on Stats. 611 ; *Mokelumne H. M. Co.* v. *Woodbury*, 14 Cal. 427. If the statute condemning land for road purposes is unconstitutional, or compensation is not tendered, a perpetual injunction against opening the road will be granted. *Gardner* v. *Newbury*, 2 Johns. Ch. 162 ; *Mokelumne H. M. Co.* v. *Woodbury*, 14 Cal. 427.

No road has ever been laid out over this ground of respondents by any authority except the act of the legislature which repealed the charter. This act is unconstitutional and void. The legislature cannot, by direct act, or by delegation of power to others, deprive any one of his property without compensation.

KNOWLES, J. This cause comes to this court on appeal from an order granting an injunction restraining the defendants from laying out and maintaining a highway over certain mining claims belonging to the plaintiffs. It appears from the record, that plaintiffs and their grantors have claimed and possessed a mining interest in these claims since A. D. 1865. That they are in possession of them now, and that they have expended quite a sum of money in opening and in preparing to work the same. That defendants, Ford, Keene and Sterling, are the county commissioners of Meagher county, and as such had laid out a road up Cement gulch, being that upon which plaintiffs' mining claims are situated, and over these claims. That the defendant Smith was a road supervisor, and, as such, was proceeding under the directions of the above-named commissioners to open said road. That there was granted by the legislative assem-

bly of this Territory, subsequent to the location of plaintiffs' mining claims, a charter to certain persons, to lay out and maintain a toll-road up said Cement gulch, and that, in pursuance of said charter, these persons did open and maintain such road. That a subsequent legislative assembly repealed the act granting this charter, and, by an act, declared this road a public highway.

The defendants claim, that by virtue of the provisions of an act of congress, passed July 26, 1866, entitled "An act providing for the right of way to ditch and canal owners, over public lands, and for other purposes" (see 14 U. S. Stat. at Large, 253), they were vested with the right to lay out and maintain this road. The section of said act which they claim grants them this right reads as follows:

SEC. 8. "That the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

The first question then presented for our consideration is, were the lands upon which these mining claims are situated fully public lands?

The same act which grants this right to construct highways over public lands, grants to citizens of the United States, and those who have declared their intentions to become such, the right to explore and occupy the mineral lands of the public domain, subject to such regulations as may be prescribed by law, and subject, also, to the local customs and rules of miners in the several mining districts, so far as the same may not be in conflict with the laws of the United States. 14 U. S. Stat. at Large, § 1, p. 253.

We hold, that this section of that act grants to the proper person an easement upon such of the mineral lands belonging to the public domain of the United States, as he may appropriate, in accordance with the local rules and customs of miners in the mining district, in which the same may be situated, there being at present no regulations prescribed by law to vary or limit these. There is no point presented in this case that would imply that plaintiffs did not hold their mining claims, in accordance with the rules and cus-

toms of the miners in the district in which the same are situated. They being in possession of them, it will be presumed that they hold them in accordance with such rules and customs, upon the same principle that the possessor of any real estate is presumed to be the owner thereof, until the contrary is shown.

This easement is one of a very extensive character, for it gives the owner thereof the right to occupy and explore such land. Being a right received by legislative grant, it should receive no narrow construction.

The rule may be stated as a general one, in respect to legislative grants in this country, that they should be construed liberally in favor of the grantee, and in such a manner as to give them a full and liberal operation, so as to carry out the legislative intent, where that can be ascertained. See 2 Washb. on Real Prop. 539. Considering the history of mining for the precious metals in the mineral lands of the United States, and the history of the passage of the act under consideration, it cannot be doubted that congress intended by it to legalize the mining upon the public domain for precious metals, which up to the passage of the same had been carried on in such a manner as to make those engaged therein trespassers as against the general government. We may assert, then, that the grant to occupy and explore the public mineral lands belonging to the public domain, carried with it, by implication, the right to take what was found by such exploration, namely, the precious metals ; for, without this right, the grant would be of no utility to those it was intended to benefit. The only object any miner would have in occupying and exploring any mineral land, would be the extraction therefrom of metals therein contained. Without this right, the miner who does so would still be a trespasser against the general government. I am aware that in the case of *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, in relation to franchises, the supreme court of the United States held, that a legislative grant should be strictly construed, and that nothing could be derived by implication from such a grant. Yet, in relation to legisla-

tive grants of this character, I believe that court would be more liberal. Certainly, public policy would not dictate so narrow a construction. Yale, in his treatise on mining claims and water rights, maintains that this grant gives as extensive rights to the miner, in regard to extracting the precious metals from a mining claim, as those specified above. See Yale on Mining Claims and Water Rights, 355, 356.

This right to occupy, explore and extract from mineral lands the precious metals, is of a higher character than if created by what is termed a parol license, for it is given by an act of congress; and, hence, equivalent to a patent from the United States to the same.

"For the transfer, by the United States or by a State, of the title of land, no particular form is required. It may be done by special act of legislation, by a clause inserted in a treaty by the treaty-making power, or by patent issued by one authorized to represent the sovereignty." 2 Washb. on Real Prop. 240.

Again: "A grant may be made by law as well as by patent issued pursuant to law." 2 Washb. on Real Prop. 240.

Of course, this right to occupy, explore and extract the precious metals from the mineral lands belonging to the public domain is not unlimited. It is restricted by the local rules and customs of the miners of the district in which such land is situated. These rules and customs refer to the location, user and forfeiture of mining claims. When a miner locates a particular portion of mining land, in accordance with these rules and customs, then the grant from the general government to occupy, explore and take there-from the precious metals, accrues to such miner over the ground located. The effect of this statute, then, is to grant these rights over the ground located, in accordance with such rules, to as full an extent as if the land had been designated in the law.

While the general government then holds the fee in the land upon which these mining claims are situated, it has

parted with an incorporeal hereditament in the same, that is, the right to occupy, explore and extract the precious metals therefrom ; and these rights have become vested in the plaintiffs, by virtue of a grant from the general government ; hence, these mining claims are no longer to the full extent public lands. The title in fee is, but these rights, which were incident to the fee, have been carved out of it, and are no longer government property but that of the plaintiffs, and it is property which the law will protect. The use to which the defendants would devote this property, would destroy plaintiff's rights. The section of the act under which defendants claim their rights are granted does not devote any particular portion of the public domain to a highway. It gives a general right to the public of a right of way for that purpose over public lands, and should be construed only to offer to devote to that use any lands belonging to the general government, not reserved for public uses, that the public might, through its proper officers, select. Until the public then accepts the offer made, and seeks to devote some particular portion of the public domain for a highway, no rights accrue to the public over such lands. See *The City and County of San Francisco* v. *David Calderwood et al.*, 31 Cal. 585. No rights could have accrued to the public in the land, upon any portion of Cement gulch, until either the legislature declared the toll-road up the same a highway, or until the said county commissioners sought to locate one there. We have seen, however, that before either of these events transpired, the rights of the plaintiffs had become vested. No greater rights could accrue to the public in these lands, than the government had at the time the public accepted the offer made in one of the ways above specified. The government, as we have seen, had parted with an easement to plaintiffs. Neither the defendants as county officers, or the Territory, or even the general government, could devote this ground to the use of a highway, without giving the plaintiffs a just compensation for all the damage done their rights.

The defendants insist that any miner who locates a mining

claim does so subject to right of the public under the section of the law referred to above to construct a highway over the same. There is no reservation of this kind in the grant to the miner. The clause, "subject to such regulations as may be prescribed by law," reserves only the right to regulate the manner and conditions under which miners must work their claims by legal enactments. The clause, "subject to the local customs or rules of miners in the several mining districts," refers evidently to the rules, customs and regulations of miners in relation to the location, user and forfeiture of mining claims. By no rule of legal construction that I am aware of can these clauses be made to refer to a reservation of a right to the public to construct a highway over located mining claims. The proper construction of the law upon these subjects is, I think, that miners have the right to occupy and explore unappropriated public mineral lands; that the public have a right to an easement for a highway over the unoccupied public domain, and that whichever is prior in time is prior in right. It is as inconsistent for the public to claim a right of way over an appropriated mining claim without giving the owner thereof a just compensation for his rights as it would be for a miner to claim the right to appropriate for mining purposes a portion of the public domain which had been devoted to the use of a public highway. The statute does not, by express terms, or by implication, make either of these rights superior to each other. There was no attempt on the part of the defendants to have the rights of plaintiffs sequestered for the benefit of the public upon giving to them a just compensation therefor. As far as we have been able to ascertain there is no provision in the statutes in this Territory which provides for the paying of a just compensation for private property which is sought to be devoted to a public use for a highway. Until there is some provision for this I do not see how private property can be devoted to the use of the public for such a purpose, notwithstanding the necessity for such an appropriation may be very great. It would seem that it was a condition precedent that a just

compensation should be given for private property before it can be taken for a public use.

It does not fully appear that the defendants claim that the public was subrogated to the rights of those persons who had constructed the toll-road over these claims. However, if they do the public could receive no greater rights than these parties had. It does not appear that they had any rights but the permission to construct their road over these claims and use it during the pleasure of the plaintiffs. The charter given to those persons could have given them no right to construct their road over these claims so as to damage the rights of plaintiffs, for a provision in a charter granting such a right would be the transferring of the property of one set of persons to another, and would be void as contravening the constitutional provision that no one can be deprived of his property without due process of law.

For these reasons the order of the court below is affirmed.

*Judgment affirmed.*