S. P. HUGHES, *Appellant,* v. JOHN VEAL, *as Trustee, etc., et al., Appellees.*

No. 16,975.

### SYLLABUS BY THE COURT.

1. HIGHWAYS—*Acceptance of Congressional Grant.* The congressional grant of a right of way for the construction of highways over public lands may be accepted by the acts of the public authorities or by the public itself, or by the concurrent action of both.

2. —— *Same.* Where the officers of the county undertake to establish a highway, and the proceedings taken are insufficient to meet all the requirements prescribed by the statutes of the state for establishing highways, and where such officers cause the highway to be surveyed and located over public lands, and the public itself adopts the action of the officers and travels over and uses the road as a highway, the combined acts of the officers and the public are sufficient to constitute an acceptance of the congressional grant.

3. —— *Existence—Proof.* The evidence in the case examined and held to be sufficient to support the decision that a highway exists over appellant's land.

Appeal from Ottawa district court. Opinion filed April 8, 1911. Affirmed.

### STATEMENT.

THIS suit was brought to enjoin the use of a strip of land as a highway. The defendant officers claimed that the highway had been legally laid out, that it existed by user and limitation, and also by dedication and acceptance. On the trial the court made findings of fact and conclusions of law as follow:

### "FINDINGS OF FACT.

"(1) That plaintiff is the owner of the northwest quarter of section 26, in township 11 south, of range 4 west of the 6th P. M., in Ottawa county, Kansas, and that he has owned and occupied said land since 1895.

"(2) That on the 18th day of June, 1872, while this was government land, the N. E. ¼ of said N. W. ¼

was entered under the homestead laws of the United States, and that this entry afterward, in 1885, ripened into a complete title. The balance of plaintiff's tract was entered some years later.

"(3) That said land was located in what is known as Pawnee Gap, which is a natural defile, or gap, between high hills.

"(4) That the county commissioners of Ottawa county attempted to lay out and establish a road through this gap by certain proceedings had in 1871, a duly certified copy of which proceedings, so far as they can be found, is hereto attached and made a part of these findings as 'Exhibit A.'

"(5) That afterward certain proceedings were had before said board by which said board attempted to vacate and relocate a part of said road, which are shown by a certified copy of all the proceedings which remain of record pertaining thereto in 'Exhibit B,' hereto attached and made a part of these findings.

"(6) That a road in substantially the same place that it now occupies has been traveled by the general public over plaintiff's land for more than thirty-five years—during all that time has been a clearly marked, well-defined road.

"(7) That long prior to the time the plaintiff became the owner of the tract of land above described, and as early as 1879, said road was worked by the road overseer of the road district through which it runs as a public road, but that very little public work was ever done on said road where it traversed the plaintiff's premises at any time, and that soon after he became the owner of said tract the plaintiff notified the road overseer, when about to work such road on his land, that the same was not a public road and that such work was discontinued.

"(8) That about ———— years ago Hughes built fences along on each side of the traveled road, leaving about sixty feet between the fences, through which lane the public continued to travel without objection or obstruction until just prior to the commencement of this action, when plaintiff attempted to put a fence across said road, which the defendants, claiming to act as public road officials, took down and removed."

"CONCLUSIONS OF LAW.

" (1) That a public road exists across the plaintiff's land at the place where he attempted to obstruct the travel, and that the defendants had a right to remove the obstruction and open the road to public travel.

" (2) That the injunction prayed for ought to be denied, and that the defendants are entitled to recover their costs herein expended."

*Z. C. Millikin,* for the appellant.

*F. D. Boyce,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: About forty years ago the public officers undertook to establish a highway over the land of appellant. A petition purporting to be signed by nineteen householders was presented to the board of county commissioners, asking for the laying out of a highway, on which viewers were appointed to lay out the road, after a bond for damages had been given. The viewers met and laid out the highway and made a report of their action, which was accepted by the board on April 7, 1871. Testimony was given to the effect that the highway attempted to be laid across appellant's land had been traveled ever since it had been laid out, in 1871; that it was the main traveled road through that part of the country; that it passed through a narrow defile, or gap, and that the travel had been confined to the line surveyed and laid out; that some work had been done on it by the road overseers, and, in later years, appellant had built fences on each side of the traveled road.

The record of the officers in establishing the road is incomplete and the proceedings taken by them appear to be somewhat defective. There is a difference of opinion in the court as to whether the condemnation proceedings can be held valid in this collateral attack, but we are united in holding that the road which the

officers undertook to lay out became a highway by dedication and acceptance. The action of the officers was taken when appellant's land belonged to the United States. A homestead entry was made on forty acres of the tract a year or more after the attempt to establish the road was made, and it was several years after that time before the remainder of it was entered. The act of Congress of 1866 provided that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." (U. S. Rev. Stat. 1878, § 2477.) In *Tholl v. Koles*, 65 Kan. 802, it was held that this act "is a present grant, and, if accepted by the legislature or the public, in an effectual manner, while the land is a part of the public domain, a highway is established." (Syl. ¶ 1.) Here the officers, representing the public, proceeded to lay out the road, fixed its location, and ever after there appears to have been a concurrence of the officers and the general public in treating and using it as a public highway. There was no acceptance of the grant by legislative act, as in the Tholl case, but an effectual acceptance may be made by the officers having charge of the roads, as well as by the public itself. In *Molyneux v. Grimes*, 78 Kan. 830, where the steps taken to establish a road were defective and irregular, the court considered the question of what was necessary to an acceptance of the congressional grant, and it was said:

"It would seem that the public might directly accept the offer of congress by general and long-continued use, and some of the decisions collected in the work referred to [6 Fed. Stat. Ann., pp. 498, 499] are to that effect; but whether so or not, it is clear that an effectual acceptance may be made by the officers to whom the matter of establishing highways has been committed by the legislature." (p. 832.)

In *Streeter v. Stalnaker*, 61 Neb. 205, where the steps taken by the officers in establishing a highway

were insufficient, the court held that there was enough to constitute an acceptance of the governmental grant. It was said:

"By this act the government consented that any of its lands not reserved for a public purpose might be taken and used for public roads. The statute was a standing offer of a free right of way over the public domain, and as soon as it was accepted in an appropriate manner by the agents of the public, or the public itself, a highway was established." (p. 206.)

In the case at bar we have not only the act of the officers who, acting for the public, caused a road to be surveyed across appellant's land, but we have the action of the public itself in using this road, which the trial court found was a "clearly marked and well-defined road," and this continued for more than thirty-five years before the suit was brought. In considering a like dedication and acceptance the supreme court of Oregon said:

"The act of congress is more than a mere general offer to the public, being in effect a dedication of the land, which becomes operative and relates back to the date of the act whenever the public, either by user or by some appropriate act of the highway authorities, affirmatively manifests an intention to use a certain definite portion of the public land as a highway. The right is necessarily indefinite, and, in a sense, floating and liable to be extinguished by a sale or disposition of the land until the highway is surveyed and marked on the ground, or in some other way identified or designated; but when the public authorities lay out and locate a road over public land of the United States by surveying and marking it on the ground, or by some legislative act, or when it is shown by user, the right becomes complete, and an intention to accept the dedication is manifested, and subsequent settlers on the land take subject to the easement." (*Wallowa County v. Wade,* 43 Ore. 253, 257.)

The case of *Smith v. Smith,* 34 Kan. 293, is cited as an authority that a road can not be established on government land so long as the title remains in the United

States, but the question of dedication by congressional grant was not presented to or considered by the court in either that case or *The State v. Horn,* 35 Kan. 717, which is also cited. In *Molyneux v. Grimes,* 78 Kan. 830, the claim was made that the Smith case determined that a public road can not be established through government land by prescription, limitation or by dedication, but the answer of the court was that "no claim was made under the federal statute, and it was not called to the attention of the court." (p. 832.)

The acceptance of the congressional grant, in a case where the county authorities had not formally established a highway, was again before the supreme court of Nebraska, and it was decided that it might be accomplished by the acts of the officers or agents of the public, or by the acts of the public itself, and it was further held:

"A settler upon the public lands of the general government, upon which there is a road in common and general use as a highway, takes subject to the public easement of a right of way on such road, although the same was never established by the public authorities under the general road laws of the state." (*Van Wanning v. Deeter,* 78 Neb. 282, syl. ¶ 3.)

Here the acts of the officers in locating the road were taken a year before any settlement was made on any part of appellant's land, and the road appears to have been used by the public as much as roads were ordinarily used in a sparsely settled section of the state. A long user by the public is not necessary to an effectual acceptance of a dedication where the owner (the United States in this instance) has given consent and is holding out a standing offer to dedicate land for a highway. Where there is consent by the owner, the length of time of the public use is not important, for, upon an acceptance by use, the rights of the public to an easement immediately pass and vest. (*Schwerdtle v. County of Placer,* 108 Cal. 589.) Here the accept-

ance does not rest on use alone, but on the action of the officers, who acted for the public, combined with the use by the public itself. The steps taken by the officers toward laying out the road are sufficient evidence of a purpose to make a highway over appellant's land. It was viewed and located by them, and, while there was an error in the plat filed, the evidence of their action leaves little doubt of the location of the road. The public has since that time used the road, and, with very little deviation, the travel has been confined to the line located by the officers. The use by the public was immediate and long continued. Some work has been done on the road by those in charge of the highways in that locality, and everybody appears to have treated it as a highway until 1895, when appellant raised a question about the validity of the proceedings taken to lay out the road. That was twenty-four years after the road had been located and used, and even then he took no steps to prevent travel. Later he built fences on each side of the road, and thus, in a way, acquiesced in its existence until about the time this action was brought. It is not necessary to rest the decision on the user by the public for the statutory period of fifteen years, but it is placed rather on the concurring acceptance of the officers and the public itself, at and shortly after the location of the road. The following additional authorities tend to support the view that the road existed by dedication and acceptance: *Wells v. Pennington County,* 2 S. Dak. 1; *Keen v. Board of Sup'rs of Fairview Twp.,* 8 S. Dak. 558; *Riverside Township v. Newton,* 11 S. Dak. 120; *Mills v. Glasscock,* (Okla. 1910) 110 Pac. 377; *Smith v. Mitchell,* 21 Wash. 536; *Adams v. Iron Cliffs Co.,* 78 Mich. 271; *Eldridge v. Collins,* 75 Neb. 65; *Cassidy v. Sullivan,* 75 Neb. 847; *Toll Road Co. v. Edwards,* 3 Colo. App. 74; *McRose v. Bottyer,* 81 Cal. 122; *Rolling v. Emrich,* 122 Wis. 134; *Township v. Skauge,* 6 N. Dak. 382.

The judgment of the district court is affirmed.