JUSTICE MORRIS
dissents.
¶101 The Court’s decision reaches a result at odds with the practical realities of the history of property ownership in Montana, particularly with respect to the location and patenting of mining claims in and around Butte. I dissent.
¶ 102 Courts in construing a statute “may with propriety recur to the history of the times when it was passed ...” in order to ascertain the reason for a particular provision. Leo Sheep Co. v. United States, 440 U.S. 668, 669, 99 S. Ct. 1403, 1405 (1979). The Court would be well advised to examine the development of the Road at issue in light of the history surrounding the development of the American West and the public domain. Like much of Montana history, cases from Butte dominated the early decisions of this Court. For example, the Court in Talbott v. King, 6 Mont. 76, 9 P. 434 (1886), reconciled the competing claims to land in the Summit Valley mining district in Silver Bow County. The Court reconciled competing claims arising from the Lode *439 Mining Act of 1866 and the General Mining Act of 1872, with claims arising from a patent for the “Butte” town site issued on September 26, 1877. Talbott, 6 Mont. at 77-78, 9 P. at 435-36.
¶103 Talbott highlights the fact that Montana, like every other western state, is a public domain state. 25 Stat. 676 (1889). Montana’s lands passed from the public domain to private and State ownership by Act of Congress. The United States granted Montana specific tracts for schools and other public purposes in the 1889 Enabling Act. 25 Stat 676. Settlers acquired public lands under the Homestead Act of 1862, 12 Stat. 392, the Stock-Raising Homestead Act of 1916, 39 Stat. 862, and the Desert Lands Act of 1877,19 Stat. 377. Miners, like the people who patented the Cobban Placer, acquired public lands under the Lode Mining Act of 1866, 14 Stat. 251, and the General Mining Act of 1872, 17 Stat. 91. The United States used disposal of the public domain alternatively to civilize the wild frontier, to stimulate the American economy, and to provide structure for national transportation and distribution of American goods. Robert Tudor Hill, The Public Domain and Democracy: A Study of Social, Economic and Political Problems in the United States in Relation to Western Development 48 (AMS Press 1968). These goals and policies brought thousands of Americans to Montana during the late 19th century and early 20th century. See Hill, The Public Doman and Democracy at 16.
¶104 One step to promote the goal of developing mineral deposits involved the United States granting rights-of-way across the public domain for the construction of public highways through a provision of the 1866 Lode Mining Act, now commonly known as R.S. 2477. Act of July 26, 1866, ch. 262, § 1, 14 Stat. 251. Section 8 of the Act recognized and preserved rights-of-way already in existence on the public domain notwithstanding the issuance of future patents. R.S. 2477; Murray v. City of Butte, 7 Mont. 61, 14 P. 656, 657 (1887). The grant was “open-ended and self-executing.” Sierra Club v. Hodel, 848 F.2d 1068, 1083 (10th Cir. 1988) overruled on other grounds by Village of Los Ranchos de Albuquerque v. Marsh, 956 F.2d 970, 973 (10th Cir. 1992).
¶105 Every acre of Montana land originated in the public domain. 25 Stat. 676 (1889). Every Montana landowner succeeded the original sovereign landowner. Many of these landowners took title to the portions of the public domain subject to existing easements granted pursuant to R.S. 2477. Murray, 7 Mont. at 68-69, 14 P. at 657. Not surprisingly, the question of whether rights-of-way were in fact created on public land has generated much litigation in light of the fact that “such a right-of-way could have come into existence without any *440 judicial or other governmental declaration....” San Juan County v. U.S., 503 F.3d 1163, 1168 (10th Cir. 2007).
¶106 Both the District Court and the Court recognized that the patent issued for the Cobban Placer incorporates the 1893 survey plat and field notes of survey for MS 4200. ¶ 26; Jefferis v. East Omaha Land Co., 134 U.S. 178, 194-95, 10 S. Ct. 518, 522 (1890). MS 4200 and the accompanying field notes certainly put any future purchasers on inquiry notice of the existence of a public easement across the Cobban Placer. More importantly, the Road existed across the public domain when William F. Cobban and William H. Lewis located the Cobban Placer in 1892. This fact creates a public road by operation of law pursuant to R.S. 2477. Moulton v. Irish, 67 Mont. 504, 510, 218 P. 1053, 1055 (1923); Murray, 7 Mont. at 67, 14 P. at 657.
¶107 The District Court erred as a matter of law when it denied summary judgment to OLR on its R.S. 2477 claim. I address this issue even though neither party raised it on appeal in light of the fact that the Court undertakes a review of the entire record in determining the existence of a public road. Reid v. Park County, 192 Mont. 231, 236, 627 P.2d 1210, 1213 (1981). This standard applies to situations, such as the one here, where concern exists over the ability to rely on the completeness of the record because the record is extremely old. Garrison v. Lincoln County, 2003 MT 227, ¶ 16, 317 Mont. 190, ¶ 16, 77 P.3d 163, ¶ 16. A review of the entire record reveals that this error of law, rather than any genuine issues of material fact, prevented the District Court from granting summary judgment to OLR on its claim that the Road was a public road pursuant to R.S. 2477.
¶108 William F. Cobban and William H. Lewis located the Cobban Placer in 1892. This location of the Cobban Placer in 1892 effectively removed it from the public domain. California Coastal Com’n v. Granite Rock Co., 480 U.S. 572, 575, 107 S. Ct. 1419, 1422 (1987). The Road initiated on public land to the west and south of the Cobban Placer and extended through the Cobban Placer to access the Plymouth Rock and Plymouth Rock Extension Placer at the time that Cobban and Lewis located the Cobban Placer.
¶109 Pursuant to the General Mining Law of 1872, Cobban and Lewis had the Cobban Placer surveyed in 1893. They filed the survey, MS 4200, with the U.S. Surveyor General’s Office on May 20, 1893. Cobban and Lewis perfected title and received their patent for the Cobban Placer in 1896. Title passed to them from the U.S. Government. The deed transferring title from the U.S. Government to Cobban Placer referred to MS 4200 and the accompanying field notes.
*441 ¶110 MS 4200 depicts the easement crossing the claim and labels it as “ROAD.” Surveyors mapped the neighboring Plymouth Rock Claims and Plymouth Rock Extension Placer Mining Claim in 1897. Both surveys depict the Road. Both surveys depict the “ROAD” as the only road to provide access. The Road has been in existence, however, at least since 1889 and 1890 when John T. Reese (Reese) located the Plymouth Rock and Plymouth Rock Extension placer claims. The Road constituted the sole means of access to the Plymouth Rock and Plymouth Rock Extension claims.
¶111 The Road does not constitute some amorphous sheep trail winding hither and yon across open country as did the one described in State v. Nolan, 58 Mont. 167, 172-73, 191 P. 150, 151-52 (1920). In fact, the Road has appeared without interruption and in the same location on the following maps and aerial photographs since 1893:
* A Northern Pacific Railway Map dated 1890-1913;
* A GLO map dated 1913;
* The Anaconda Company’s “Hycon” base map dated 1952;
* The U.S. Geological Survey aerial photograph dated 1952;
* The U.S. Geological Survey “Homestake Quad” Map dated 1963-1978;
* A General Highway Map-Silver Bow County, indicating the road inventory for gas tax apportionment, dated 1948-1989;
* A Federal Aid, Local & City Road System, dated 1977-1986;
* A “Map of Butte & Vicinity” prepared by J. Miller of the Butte-Silver Bow/State of Montana Land Appraisal Office dated May 1986; and
* A “Cadastral Plat,” Montana Department of Revenue-Property Assessment Division Butte-Silver Bow Appraisal, indicating the “ROAD” as a county road dated January 1999.
¶112 The United States, through R.S. 2477, made an express offer in 1866 to dedicate unappropriated lands for highways. Lovelace v. Hightower, 168 P.2d 864, 866 (N.M. 1946); Smith v. Mitchell, 58 P. 667, 668 (Wash. 1899). R.S. 2477 expressly provides: “[t]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.” “No question of implied dedication is involved.” Lovelace, 168 P.2d at 866 (emphasis in original). The Cobban Placer left the public domain in 1892, well after the United States’s express dedication of easements in 1866 across the public domain through R.S. 2477.
¶113 The Court asserts that R.S. 2477 cannot demonstrate federal intent to create an easement in light of Leo Sheep, 440 U.S. 668, 99 S. *442 Ct. 1403. ¶ 36. Leo Sheep concerned the proposed creation of a public roadway easement by necessity across land granted by the United States to the Union Pacific Railroad pursuant to the Union Pacific Act of 1862 and its unique checkerboard land grant. Leo Sheep, 440 U.S. 680-81, 99 S. Ct. 1410. The U.S. Supreme Court determined that the Act specifically listed reservations to the grant to Union Pacific. As a result, the Court refused to add to the list of expressly reserved lands contained in the Act “by divining some ‘implicit’ congressional intent.” Leo Sheep, 440 U.S. at 679, 99 S. Ct. at 1409.
¶114 Congress failed to include express easements in the Union Pacific Act of 1862 due to difficulty in enticing investors into the project of developing a transcontinental railroad. Congress originally included all of the odd-numbered lots within 10 miles on either side of the track for the railroad. Congress later upped the ante to 20 miles on either side of the track when the Union Pacific’s original subscription drive for private investment proved a failure. Leo Sheep, 440 U.S. at 676-77, 99 S. Ct. at 1408. It is not surprising in light of these difficulties, therefore, that Congress elected not to encumber the land granted to the Union Pacific with any reserved easements. The Court refused to recognize implied easements not enumerated in the Act under these circumstances. Leo Sheep, 440 U.S. at 679, 99 S. Ct. at 1409; cf. Herrin v. Sieben, 46 Mont. 226, 235, 127 P. 323, 328 (1912) (noting that the United States must have reserved an implied easement over land granted to the Northern Pacific Railway Company) overruled on other grounds by Simonson v. McDonald, 131 Mont. 494, 501, 311 P.2d 982, 986 (1957). Leo Sheep’s restriction on recognizing implied easements in the Union Pacific Act of 1862 does not apply, however, to the Cobban Placer’s public easement that arises from the United States’s express dedication of easements in 1866 in R.S. 2477.
¶115 The Court in City of Butte v. Mikosowitz, 39 Mont. 350, 102 P. 593 (1909), noted that R.S. 2477 sought “to enable the public to acquire a roadway over public lands.” Mikosowitz, 39 Mont. at 355, 102 P. at 595. The Court rejected the notion that R.S. 2477 dictated a particular form of establishing such a road. Mikosowitz, 39 Mont. at 358, 102 P. at 595. The Washington supreme court agreed that state and local officials need not have any role in accepting this offer of dedication made by the United States: “An offer of dedication, to bind the dedicator, need not be accepted by the city or county, or other public authorities, but may be accepted by the general public.” Okanogan County v. Cheetham, 80 P. 262, 264 (Wash. 1905) overruled on other grounds by McAllister v. Okanogan County, 100 P. 146, 147-48 (1909). *443 To deny the fact that local authorities need not take any action to accept the dedication “would be to deny the whole doctrine of dedication.” Cheetham, 80 P. at 264. The public accepts the United States’s dedication pursuant to R.S. 2477 “by entering upon the land and enjoying the privileges offered; or, briefly, by user.” Cheetham, 80 P. at 264. R.S. 2477 constitutes an express dedication of easements across the public domain. Lovelace, 168 P.2d at 866.
¶116 Admittedly the Court in Nolan rejected as insufficient testimony that a sheep trail that had been used “since the early 90’s” constituted construction of a road for purposes of R.S. 2477. Nolan, 58 Mont. at 170,191P. at 154. The Nolan Court incorrectly stated that no public road could be established pursuant to R.S. 2477 without establishing public use for the requisite five-year statutory period before Section 2600 of the Political Code took effect on July 1, 1895. Nolan, 58 Mont. at 173-74,191P. at 154.1 must confess my own recent complicity in perpetrating this erroneous interpretation of R.S. 2477. See Watson v. Dundas, 2006 MT 104, ¶ 42, 332 Mont. 164, ¶ 42, 136 P.3d 973, ¶ 42. We noted in Watson that Watson had failed to cite any authority to indicate that the five-year statutory requirement before July 1, 1895, to establish a public right-of-way by prescription did not apply. Watson, ¶ 42. Such contrary authority surely existed, however, as evidenced by the clear statement announced by the Court in Moulton.
¶117 The Court in Moulton rejected a claim of a public road leading to some forest lands in Fergus County because the proponents had failed to demonstrate public use for the requisite five-year period before July 1,1895. Moulton, 67 Mont. at 508-09, 218 P. at 1054-55. In reaching this conclusion, however, the Court cautioned that “[w]e do not wish to be understood as holding that the continuous use of a road by the public for five years prior to July 1, 1895, was necessary to establish a public highway over unappropriated public lands in order to meet the requirements of [R.S. 2477].” Moulton, 67 Mont. at 510, 218 P. at 1055 (citing Murray, 7 Mont. 61, 14 P. 656; and Hughes v. Veal, 114 P. 1081 (Kan. 1911)).
¶118 The Court’s statement in Moulton rejecting public use for any statutory period comports with the majority position. E.g., Lovelace, 168 P.2d 864; Leach v. Manhart, 77 P.2d 652, 653 (Colo. 1938); Nicolas v. Grassle, 267 P. 196, 197 (Colo. 1928); Hughes, 114 P. at 1083; Wallowa County v. Wade, 72 P. 793, 794 (Ore. 1903); Streeter v. Stalnaker, 85 N.W. 47, 48 (Neb. 1901); Wells v. Pennington County, 48 N.W. 305, 306 (S.D. 1891); McRose v. Bottyer, 22 P. 393, 394-95 (Cal. *444 1889); Smith, 58 P. at 668. For example, the court in Hughes agreed that “[a] long user [sic] by the public is not necessary to an effectual acceptance of a dedication where the owner (the United States in this instance) has given consent, and is holding out a standing offer to dedicate land for a highway.” Hughes, 114 P. at 1083.
¶119 It would be counter-intuitive to impose some sort of statutory period relevant to a prescriptive easement in connection with R.S. 2477. The United States expressly dedicated an offer of an easement. Lovelace, 168 P.2d at 866; Smith, 58 P. at 668; Martino v. Board of County Com'rs of County of Pueblo, 360 P.2d 804, 806-07 (Colo. 1961). The public’s acceptance of that express offer could not be adverse to the United States. The public’s acceptance of the United States’s express offer of dedication also cannot be considered prescriptive. Reese accepted this express offer of dedication when he located the Plymouth Rock in 1889 and the Plymouth Rock Extension Placer in 1890, and used the Road across the public domain to access them. Reese’s acceptance of the United States’s'express offer of dedication subjected any future claims on the public domain crossed by the Road to this public easement. Nicolas, 267 P. at 197 (“The entrymen took title subject, of course, to the right of way.”).
¶120 For example, in Murray the plaintiff brought an action of ejectment against the City of Butte to recover possession of certain real property situated in Butte. The plaintiff relied upon a mineral patent that he had received from the United States. The City of Butte defended by offering to prove that various streets and roads existed at the time of plaintiffs location of the mining claim in question. Murray, 7 Mont. at 66, 14 P. at 656. The trial court refused to allow the City of Butte to introduce the proof and this Court reversed. Murray, 7 Mont. at 66-67, 14 P. at 657.
¶121 The Court, relying on R.S. 2477, determined that the City of Butte should have been allowed to prove that it had accepted the grant offered by R.S. 2477. Murray, 7 Mont. at 67, 14 P. at 656. The Court noted that “‘[t]here is no particular form of ceremony necessary in the dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation.’” Murray, 7 Mont. at 67, 14 P. at 656-57 (quoting City of Cincinnati v. White’s Lessee, 31 U.S. 179, 186 (1832) (internal emphasis omitted).
¶122 The Court rejected the plaintiffs argument that the City of Butte had failed to object to his patent application or claim an easement at that time. The Court recognized that “the United States *445 cannot, by patent, convey to any grantee a greater right than it has at the time of grant.” Murray, 7 Mont. at 68, 14 P. at 657. The Court concluded that an easement valid against the United States would be valid against the plaintiff. The City of Butte should have been allowed to prove that the roads in question existed before the plaintiff had located his property. Murray, 7 Mont. at 69, 14 P. at 657. The logic of Murray dictates that the existence of the Road across the Cobban Placer at the time of its location in 1892 demonstrates the acceptance of the public right-of-way authorized by R.S. 2477. Cobban and Lewis took title to their mining claim subject to the Road. Murray, 7 Mont. at 69, 14 P. at 657.
¶123 The Court and the Landowners concede that the Road constitutes a private easement across the Cobban Placer. ¶ 16. The Court fails to explain, however, how such a private easement came to exist. It dismisses as “immaterial” the matter of the private easement. ¶ 16. The Court concludes that the Cobban Placer patent’s omission of any expressed reserved easement for a public road defeats the notion of a public road. ¶ 34. The same patent makes no mention of any private easement either, yet the Court and the Landowners concede that the Road existed at the time that Cobban and Lewis located the Cobban Placer in 1892. This “immaterial” concession seems dispositive. Murray, 7 Mont. at 69, 14 P. at 657.
¶124 The Court in Murray confirmed that a claimant took title to a mining claim subject to any easements valid against the United States when the land comprised the public domain. Murray, 7 Mont. at 68, 14 P. at 657. Similarly, the court in Hughes recognized that where the United States, as the owner of the public domain, consents to the easement “the length of time of the public use is not important, for upon acceptance by use the rights of the public to an easement immediately passed and vested.” Hughes, 114 P. at 1083. The court in Streeter, likewise interpreted R.S. 2477 as a standing offer for a free right-of-way over the public domain “and as soon as it was accepted in an appropriate manner by the agents of the public, or the public itself, a highway was established.” Streeter, 85 N.W. at 48 (emphasis added) (citing McRose, 22 P. 393).
¶125 The Court curiously relies on Robertson v. Smith, 1 Mont. 410, 417 (Mont. Terr. 1871), for the proposition that R.S. 2477 constituted some sort of implicit reservation. ¶ 39. There Meagher County sought to lay out a public road pursuant to R.S. 2477 across a mining claim that already had been located and removed from the public domain. Robertson, 1 Mont. at 413. The Court correctly rejected the public road *446 based upon the notion that “whichever is prior in time is prior in right.”Robertson, 1 Mont. at 418. Here the Road was “prior in time” as it existed across the public domain at the time that Cobban and Lewis located the Cobban Placer in 1892. They took title to the Cobban Placer subject to the existing road. Murray, 7 Mont. at 68, 14 P. at 657.
¶126 The South Dakota supreme court understood Congress’s intent in enacting R.S. 2477 as follows:
[T]o enable the citizens and residents of the states and territories where public lands belonging to the United States were situated to build and construct such highways across the public domain as the exigencies of their localities might require, without making themselves liable as trespassers. And when the location of the highway and roads was made by competent authority or by public use, the dedication took effect by relation as of the date of the act; the act having the same operation upon the lines of the road as if specifically described in it.
Wells, 48 N.W. at 306 (emphasis added); see also Wade, 72 P. at 794.
¶127 The language of Section 2600 of the Political Code comports with this understanding. The statute provided in pertinent part that “[a]ll highways, roads, streets, alleys, courts, places and bridges laid out or erected by the public or now traveled or used by the public ... are public highways.” Section 2600 (emphasis added). Montana adopted the language of Section 2600 from the California code that had contained a similar provision since 1883. Bolinger v. City of Bozeman, 158 Mont. 507, 511, 493 P.2d 1062, 1064 (1972); see also McRose, 22 P. at 394.
¶128 The term “now,” as used in Section 2600, “clearly indicates the intention to leave intact such rights as the public had already acquired....” Barnard Realty Co. v. City of Butte, 48 Mont. 102, 110, 136 P. 1064, 1067 (1913). By contrast, the Legislature expressed its intent that after July 1, 1895, a highway could not be established by use unless accompanied by some action on the part of the public authorities. Barnard Realty Co., 48 Mont. at 110, 136 P. at 1067. The Court in Barnard Realty Co. recognized the distinction between the creation of public highways before 1895, and the creation of public highways after Section 2600 went into effect on July 1, 1895.
¶129 Reese surely could not have obtained a private easement across the public domain when he located the Plymouth Rock in 1889 and accessed it by the Road. E.g., United States v. California, 332 U.S. 19, 40, 67 S. Ct. 1658, 1669 (1947) (stating the general rule that a party cannot obtain a prescriptive easement against the United States). The *447 Court deems it “highly improbable that the United States would reserve a public road to access two mining claims ...” that had been segregated from the public domain. ¶ 34 (emphasis in original). Others disagree. A road may be a public highway even though it reaches but one property owner. Leach, 77 P.2d at 653; Nicolas, 267 P. at 197 (citing 29 C.J. 367). The property owner has the right to use the highway to reach his property and the public has a corresponding right of access along the highway to the private property. Leach, 77 P.2d at 653; Nicolas, 267 P. at 197. Thus, Reese had the right to use the Road to reach the Plymouth Rock when he located it in 1889. King v. Brown, 284 P.2d 214, 215-16 (N.M. 1955) (citing Murray, 7 Mont. 61, 14 P. 656). The public had a corresponding right to use the Road to the point that it reached the Plymouth Rock. Leach, 77 P.2d at 653; Nicolas, 267 P. at 197; Pagels v. Oaks, 19 N.W. 905, 907 (Iowa 1884).
¶130 The standard for determining the existence of a public road is whether the record, taken as a whole, shows that a public road was created. Lee v. Musselshell County, 2004 MT 64, ¶ 14, 320 Mont. 294, ¶ 14, 87 P.3d 423, ¶ 14; Reid, 192 Mont. at 236, 627 P.2d at 1213. We do not require strict proof that the circumstances satisfy the statutory standards in cases where the documentation is very old in light of the fact that it is more difficult to rely on the completeness of the record. Lee, ¶¶ 14, 17. We do know, however, that the Road has been used and in existence since 1889 when Reese located the Plymouth Rock Placer claim.
¶131 The District Court found that the Road, as depicted on MS 4200 in 1893, constituted the sole means of access to the Plymouth Rock and Plymouth Rock Extension claims. Cobban’s and Lewis’s segregation of the Cobban Placer from the public domain in 1892 had no effect on the public easement, unless his occupation of the claim could have the effect of extinguishing an existing easement. Easements terminate only by some method recognized by law. Gerald Komgold et al. Private Land Use Arrangements: Easements, Real Covenants, and Equitable Servitudes, § 6.01 (2d ed. Juris Publg. 2004). The common law recognizes numerous legal methods to terminate an easement including by terms of an agreement, completion of the purpose of the easement, adverse possession, overuse, alternation of dominant estate, abandonment, estoppel, merger, destruction of servient estate, and by tax deed, among others. Korngold, Private Land Use Arrangements: Easements, Real Covenants, and Equitable Servitudes, §§ 6.02-6.16.
¶132 The Legislature has recognized merger, destruction of the servient estate, acting in a way inconsistent with the easement, and *448 abandonment of a prescriptive easement for the statutory period as methods to terminate an easement. Section 70-17-111(1)(a)-(d), MCA. Montana courts also recognize clear and unambiguous easement language, See Mularoni v. Bing, 2001 MT 215, ¶ 32, 306 Mont. 405, ¶ 32, 34 P.3d 497, ¶ 32, easement by prescription, Leisz v. Avista Corp., 2007 MT 347, ¶ 16, 340 Mont. 294, ¶ 16, 174 P.3d 481, ¶ 16, and abandonment pursuant to statute, Park County Rod & Gun Club v. Department of Hwys., 163 Mont. 372, 376-77, 517 P.2d 352, 355 (1973); Section 7-14-2615, MCA, as methods to extinguish an easement. The intent to abandon, however, must be clear and unambiguous. Smith v. Russell, 2003 MT 326, ¶¶ 19-20, 318 Mont. 336, ¶¶ 19-20, 80 P.3d 431, ¶¶ 19-20. Cobban’s and'Lewis’s location and occupation upon the Cobban Placer claim does not fall within the ambit of any of the recognized methods to terminate an easement in Montana.
¶133 I turn next to the ¡question of whether the incorporation of MS 4200 and the survey field jnotes into the patent issued for the Cobban Placer created an easement by plat. I do not agree with all of the Court’s analysis regarding our easement by plat jurisprudence. I will save most of these disagrefements for another day, however, and focus on the two primary arguments that the Court advances to support its holding that no public easement by plat exists. The Court first asserts that the easement by platdoctrine does not create public easements. ¶ 61. The Court next determines that MS 4200 does not clearly manifest the United Statés’s intent to grant or reserve a public easement. ¶ 62.1 will address each objection in turn.
¶134 The Court rejects the notion that MS 4200 created a public easement across the Cobban Placer because it determines that easements by plat cannot create public roadways. The Court reasons that none of our previous decisions have recognized the creation of public roadways. ¶ 61. Conversely, none of our previous easement by plat decisions has determined that easements by plat may not be public. E.g. Loomis v. Luraski, 2001 MT 223, 306 Mont. 478, 36 P.3d 862; Pearson v. Virginia City Ranches Ass’n., 2000 MT 12, 298 Mont. 52, 993 P.2d 688; Kelly v. Wallace, 292 Mont. 129, 972 P.2d 1117 (1998); Tungsten Holdings Inc. v. Parker, 282 Mont. 387, 938 P.2d 641 (1997); Ruana v. Grigonis, 275 Mont. 441, 913 P.2d 1247 (1996); Halverson v. Turner, 268 Mont. 168, 885 P.2d 1285 (1994); Bache v. Owens, 267 Mont. 279, 883 P.2d 817 (1994). Nothing in those cases suggests any legal or logical reason to deduce such a conclusion.
¶135 Moreover, none of the easement by plat cases addressed a situation, such as the one presented here, where the easement in *449 question was created pursuant to an offer to the public by the United States, to create a public highway. Cobban and Lewis located the Cobban Placer on the public domain in 1892. The Road existed across their proposed claim as Reese had located the Plymouth Rock and Plymouth Rock Extension Placer in 1889 and 1890. The Road provided the only access to these claims. “[P]arties are presumed to contract with reference to the condition of the property at the time of the sale, provided the marks are open and visible.” Godfrey v. Pilon, 165 Mont. 439, 445, 529 P.2d 1372, 1375 (1974) (citing Pioneer Mining Co. v. Bannack Gold Mining Co., 60 Mont. 254, 263, 198 P. 748, 751 (1921) (internal emphasis and quotation marks omitted).
¶136 The Road was open and visible in 1893 when the Cobban Placer was surveyed. Godfrey, 165 Mont. at 445, 529 P.2d at 1375. Cobban and Lewis would have been familiar with the Road when they located the Cobban Placer in 1892 as the Road provided the only access across the public domain to it. Godfrey, 165 Mont. at 445, 529 P.2d at 1375. MS 4200 merely confirmed these facts. The proper filing of MS 4200 in the U.S. Surveyor General’s Office on May 20, 1893, as required by law, put all future purchasers of the Cobban Placer on inquiry notice of the public easement created by the Road. Halverson, 268 Mont. at 172-73, 885 P.2d at 1288.
¶137 With respect to the Court’s determination that MS 4200 does not clearly manifest the United States’s intent to reserve a public easement, I would point to the Court’s error in looking for the United States’s intent in the patent itself transferring title of the Cobban Placer to Cobban and Lewis. ¶ 29. The plain language of R.S. 2477 provided the United States’s express intent to grant a public easement. These public easements across the public domain encumbered future claimants of the public domain over which these public easements crossed. Murray, 7 Mont. at 68, 14 P. at 657. More importantly, the court in Standage Ventures, Inc. v. State of Arizona, 499 F.2d 248, 250 (9th Cir. 1974), derided as “palpably insubstantial” a claim that a public road had not been created pursuant to R.S. 2477 due to the absence of an express reservation in the landowner’s patents. The court dismissed this argument “particularly since an official plat disclosing the easement was referred to in the patents and thereby incorporated by reference.” Standage Ventures, Inc., 299 F.2d at 250 (citing United States v. Otley, 127 F.2d 988, 993 (9th Cir. 1942)).
¶138 We know that the patent here likewise incorporated MS 4200 and the survey notes. ¶ 26; Jefferis, 134 U.S. at 194-95, 10 S. Ct. at 522. The District Court identified no fewer than eight deeds involving *450 transfers of portions of the Cobban Placer between 1961 and 1998 that refer to MS 4200. MS 4200 and the survey notes identified the Road. Likewise the District Court identified five additional surveys that identified the Road. Each of these five surveys refers to MS 4200 or other surveys that refer to MS 4200. The Court’s express concern for the peace of mind of “past, present, and future generations of Montana landowners,” ¶ 67, rings hollow in light of the evidence in the whole record that should have put these Landowners on notice of the presence of a public easement across their property.
¶139 The Court cites Leo Sheep for the proposition that land titles have a special need for “certainty and predictability.” ¶ 66, (quoting Leo Sheep, 440 U.S. at 687, 99 S. Ct. 1413.) The Court instead should heed the admonition in Leo Sheep to “recur to history of the times” when the United States in 1866 offered an express dedication of an easement across the public domain to members of the general public. Leo Sheep, 440 U.S. at 669, 99 S. Ct. 1405. A review of this history would confirm the United States’s intent to offer an express easement to members of the general public, without any involvement or act by local officials, to create public easements across the public domain. Moulton, 67 Mont. at 510, 218 P. at 1055; Murray, 7 Mont. at 68, 14 P. at 656-57. Reese accepted that invitation when he located the Plymouth Rock in 1889 and the Plymouth Rock Extension Placer in 1890. He accessed these claims by traveling across the public domain on the Road. I dissent.
JUSTICES LEAPHART and WARNER join in the foregoing dissent.